GRIFFIN et al., Appellees,

v.

LAMBERJACK et al., Appellants.

[Cite as *Griffin v. Lamberjack* (1994), 96 Ohio App.3d 257.]

Court of Appeals of Ohio,
Ottawa County.

No. 93OT019.

Decided July 29, 1994.

*Terrence R. Rudes,* for appellees.

*John F. Potts,* for appellants.

---

*Per Curiam.*

This case is before the court on appeal from a judgment of the Ottawa County Court of Common Pleas, which granted appellees' motions for a directed verdict on their claims of adverse possession and easement. The lower court also granted appellees' motion for a directed verdict on appellants' counterclaims. Appellants, Vincent and Joanne[1] Lamberjack ("Lamberjack"), appeal that judgment and ask this court to consider the following assignments of error:

"I. It constituted error to grant a directed verdict in favor of plaintiffs on their claim for adverse possession."

"II. It constituted error to grant a directed verdict in favor of plaintiffs on their claims for enforcement of the easement."

"III. It constituted error for the trial court to grant a directed verdict dismissing the counterclaim."

"IV. It constituted error for the trial court to instruct the jury to determine the amount of punitive damages."

"V. It constituted error for the trial court to grant [*sic,* deny] appellant's motion for a continuance."

"VI. It constituted plain error to instruct the jury that attorney fees could be assessed as a component of compensatory damages."

Appellees in this consolidated case are Gary and Susan Griffin, Wilbert and Dolores Walterbusch, Jeffery and Barbara Apling, and Roy and Holly Brecht. Each of the appellees claims an interest, through adverse possession, in three separate parcels of land[2] purchased by their predecessors in interest from the original grantors, Walter and Alice Apling, in the 1950s. Because appellees' properties are low-lying lands near Lake Erie, rising lake levels during the 1970s forced appellees or their predecessors to construct a dike around their properties.

---

1. Although she was named in the complaint, Joanne Lamberjack never answered. Vincent Lamberjack was treated as the sole defendant throughout the proceedings below. Therefore, for the purpose of this appeal only, Lamberjack shall be used in the singular rather than the plural form.

2. The Brechts claim an equitable interest in one of the properties by virtue of a land contract with Jeffery and Barbara Apling.

In 1979, Lamberjack purchased, from the Apling family, 12.15 acres of land adjoining appellees' properties. When Lamberjack had his property partially surveyed in 1980 or 1981, he discovered that a problem existed with regard to the deed descriptions of appellees' properties. In 1990, Lamberjack obtained a complete survey of the property. The survey revealed that the metes and bounds descriptions appearing in appellees' deeds were totally erroneous and that each of the appellees was occupying land owned by Lamberjack.

When Lamberjack threatened to remove portions of the dike, appellees each brought a quiet title action requesting a temporary restraining order and permanent injunction prohibiting Lamberjack from removing any part of the dike. Appellees also alleged that the deeds to the three properties granted each of them a sewage easement and that Lamberjack failed to maintain the easement. Appellees contended that Lumberjack's interference with the easement was willful, wanton and intentional. They asked for damages for the cost of installing new sewage drains either to an existing ditch ("dredge cut") on Lamberjack's property or to some other sewage system. They further requested that Lamberjack be permanently enjoined from interfering with their easement rights. In subsequent amended complaints, appellees requested punitive damages and attorney fees.

Lamberjack answered the complaints and set forth a claim for trespass and a claim for appellees' alleged pumping of grey water (treated sewage) from their property onto his property. Lamberjack asked for damages and a permanent injunction barring appellees from trespassing, encroaching, or discharging water on his land.

While the record is unclear, it appears that at some point during the proceedings below, Lamberjack filed a petition in bankruptcy and the proceedings in the instant case were stayed. In a judgment entry dated January 8, 1993, the federal bankruptcy court lifted the stay, retroactive to December 24, 1992. A jury trial was then scheduled for February 23, 1993. Notices of this trial were sent to Lamberjack's attorney in the bankruptcy action, who informed the court that she would not represent Lamberjack in the suit before the common pleas court.

On February 17, 1993, Victor Gonzalez, who was Lamberjack's attorney of record throughout this cause, filed a motion to withdraw. Gonzalez informed the court that he no longer represented Lamberjack and asked that the court enter this fact on the record. The next day Lamberjack filed a *pro se* motion for a continuance, asserting that Gonzalez recently withdrew as his attorney of record and that, despite his efforts to obtain new counsel, he had been unable to do so.

On February 22, 1993, the trial court overruled both the motion to withdraw and the motion for a continuance.

At the commencement of trial on February 23, 1993, Gonzalez renewed his motion to withdraw. He informed the court that he was listed as a major creditor in Lamberjack's bankruptcy action and that, as a result, a conflict of interest existed. The lower court granted the motion to withdraw. However, when Lamberjack requested a continuance for the purpose of obtaining new counsel, the trial court denied his motion and ordered Lamberjack to proceed *pro se.* Lamberjack argued that until February 8, 1993, he believed that James Godbey would represent him in the instant action. Lamberjack maintained that on that date he was informed that Godbey would not be representing him in this action and that he was not able to obtain other counsel in the two weeks prior to trial.

Due to our disposition of this cause, a complete recitation of the facts adduced at trial is unnecessary. Nevertheless, the sum and substance of the evidence offered related to appellees' claims of adverse possession and sewage drainage easements and Lamberjack's counterclaims of trespass and the alleged pumping of sewage onto his property. There was no evidence offered to establish that appellees were riparian owners of land abutting the dredge cut on Lamberjack's land or that their causes of action were based upon any claim that Lamberjack was interfering with the drainage of surface water from their properties.

At the close of all evidence, appellees moved for a directed verdict on their claims and on Lamberjack's counterclaims. The trial court granted appellees' motions on the issues of adverse possession and the existence of an easement. The court further found, in essence, that its finding of adverse possession mooted Lamberjack's counterclaim based on trespass and dismissed that claim. The lower court then determined that the alleged pumping of sewage onto Lamberjack's land by appellees was a criminal matter and dismissed that counterclaim. Last, the court below held that the sole issue for the jury was whether Lamberjack stopped the "flow of water" in the dredge cut and informed the parties that he was going to instruct the jury on a landowner's right to a free flow of water off his property. No one objected.

In his instructions to the jury, the trial judge gave an instruction on the law of riparian rights and the law of negligence. The following jury instruction was provided to the jury on the issue of damages:

"You may consider the following potential items in reaching your damage determination. The costs of opening the dredge cut and maintenance of keeping the dredge cut open which is the only way for the water and effluent from the property of the plaintiffs to flow to the west or by being pumped out into Turtle Creek. The costs of employing counsel to enforce the rights granted to the plaintiffs by the easement to the dredge cut, and the natural flow of water and

effluent from the plaintiff's property is another element of damages that you may consider.

"\* \* \*

"It is an established principle of law in this state that punitive damages can be awarded in such cases as this involving fraud, malice or insult.

"Evidence of actual malice must be present to support an award of punitive damages. Actual malice may take either the form of Defendant's express ill will, hatred or spirit of revenge or the form of reckless, willful or wanton behavior which can be inferred from conduct or the surrounding circumstances. Moreover, intentional, reckless, wanton, willful and gross acts which cause damage to property may be sufficient to evidence that degree of malice required to support an award of punitive damages.[3]

"If you find that the plaintiffs are entitled to recover punitive damages from the defendant Lamberjack, the law permits you to award a sum which you find to be just and proper in view of all the circumstances." (Footnote added.)

In explaining the verdict forms, the lower court stated that the jury was to insert the amount, if any, of punitive damages awarded to each of the appellees.

The jury returned separate verdicts in favor of appellees, the Griffins, the Aplings and the Walterbusches. Damages in the amount of $9,700 and punitive damages in the amount of $40,000 were awarded to each pair of property owners.

On March 18, 1993, the trial court entered three judgments quieting title in the disputed property in the names of the Griffins, the Aplings and the Walterbusches, finding that a valid easement existed and awarding damages in conformity with the jury's verdicts. The court also issued two permanent injunctions, one enjoining Lamberjack from removing dikes, trees and other structure on appellees' properties and the other enjoining Lamberjack from interfering with the flow from appellees' septic systems to the dredge cut. This appeal followed.

We shall first consider Lamberjack's Assignment of Error V. Lamberjack contends that the trial court erred in refusing to grant his motion for a continuance on the day of trial.

---

**3.** Again, this instruction is not a proper statement of the law. In *Preston v. Murty* (1987), 32 Ohio St.3d 334, 512 N.E.2d 1174, at the syllabus, the Supreme Court of Ohio defined "actual malice" necessary for an award of punitive damages as:

"\* \* \*

"(1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, *or* (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." (Emphasis *sic*.)

264

■ The grant or denial of a motion for a continuance is a matter within the discretion of the trial court and will be reversed on appeal only if the trial court abused that discretion. *Norris v. Weir* (1987), 35 Ohio App.3d 110, 117, 520 N.E.2d 10, 16–17. An abuse of discretion is more than an error of law and judgment, but implies on the part of the trial judge an attitude that is unreasonable, arbitrary, or unconscionable. *Ruwe v. Springfield Twp. Bd. of Trustees* (1987), 29 Ohio St.3d 59, 61, 29 OBR 441, 443, 505 N.E.2d 957, 959.

■ In determining whether the trial court abused its discretion in granting or denying the motion for a continuance, a reviewing court must balance the interests of judicial economy and justice against any potential prejudice to the defendant. *Niam Investigations, Inc. v. Gilbert* (1989), 64 Ohio App.3d 125, 128, 580 N.E.2d 840, 841. Objective factors which may be considered by the trial judge in determining a motion for a continuance include the length of the delay requested, whether other continuances have been allowed, any inconvenience to the litigants, the court and witnesses, whether the requested delay is legitimate rather than dilatory, purposeful or contrived, whether the defendant contributed to the circumstances underlying the request and other relevant factors based on the unique aspects of each case. *State v. Unger* (1981), 67 Ohio St.2d 65, 67–68, 21 O.O.3d 41, 43, 423 N.E.2d 1078, 1080.

■ In the present case, the trial judge was aware that Lamberjack was involved in bankruptcy proceedings in federal court. Through the motions of Lamberjack and Gonzalez, the court was also conscious of the fact that Lamberjack and Gonzalez had severed their attorney-client relationship. Nevertheless, without inquiring as to the basis of the termination of that relationship, the trial court essentially forced Lamberjack to retain Gonzalez as his counsel until the morning of trial. Thus, while Lamberjack did have notice of the trial date and was present, his case was severely prejudiced.

Moreover, there is no evidence in the record of this case to establish that Lamberjack's request for a continuance was dilatory, purposeful, or contrived. There is no pattern of hiring and firing counsel as a dilatory tactic or in requesting previous continuances upon contrived grounds. Finally, the requested length of the continuance, sixty days, was reasonable in light of the fact that Lamberjack's new counsel would be required to familiarize himself or herself with the case.

We therefore conclude that the trial judge's attitude in permitting Lamberjack's counsel to withdraw on the day of trial and then denying Lamberjack's motion for a continuance was unreasonable, arbitrary, and unconscionable. Accordingly, Lamberjack's Assignment of Error V is found well taken.

Lamberjack's first three assignments of error challenge the trial court's grant of appellees' motions for a directed verdict on the issues of adverse possession, the existence of an easement, and Lamberjack's counterclaim for the pumping of treated sewage onto his property. Due to our disposition of Lamberjack's Assignment of Error V, we need not reach the merits of Assignments of Error I and II.

We find, however, that, even on the facts offered in the trial below, the trial court erred, as a matter of law, in granting a directed verdict on Lamberjack's counterclaim. Lamberjack's counterclaim provides operative facts relative to the pumping of treated sewage onto his property that set forth claims in trespass and/or nuisance. At trial, appellees admitted that they pumped the treated sewage from their drainage tile onto Lamberjack's property. Simply because the same set of facts may give rise to a criminal action does not preclude Lamberjack from pursuing a civil action for damages. Therefore, the trial court did err in directing a verdict on Lamberjack's counterclaim in favor of appellees on this ground. Lamberjack's Assignment of Error III is found well taken.

In Assignments of Error IV and VI, Lamberjack contends that the trial court erred in its instructions to the jury with regard to punitive damages and attorney fees. Although it could be argued that Lamberjack, by failing to object to the trial court's instructions, waived his right to raise the same as error on appeal, Civ.R. 51(A), we conclude the lower court's jury instructions on the issues of punitive damages and attorney fees were so clearly erroneous and patently contrary to Ohio law that the plain error doctrine must be applied to prevent a manifest miscarriage of justice. *Reichert v. Ingersoll* (1985), 18 Ohio St.3d 220, 223–224, 18 OBR 281, 284, 480 N.E.2d 802, 806.

In Assignment of Error IV, Lamberjack asserts that the trial court's instructions were erroneous because the court permitted the jury to determine the amount of punitive damages. We agree.

R.C. 2315.21(C)(1) and (2) clearly state that liability for punitive or exemplary damages can be determined by the trier of fact, but that the amount of those damages shall be determined by the court. This court has previously found that R.C. 2315.21(C)(1) and (2) are not violative of an individual's right to a jury trial under Article I, Section 5 of the Ohio Constitution. See *Wightman v. Consol. Rail Corp.* (1994), 94 Ohio App.3d 389, 640 N.E.2d 1160. Here, the court's instructions expressly directed the jury to determine the *amount* of punitive damages. Therefore, Lamberjack's Assignment of Error IV is found well taken.

In his Assignment of Error VI, Lamberjack argues that the trial court erred in instructing the jury that attorney fees could be assessed as a component of appellees' compensatory damages.

Attorney fees are recoverable as compensatory damages in an action where punitive damages are properly awarded. *Langhorst v. Riethmiller* (1977), 52 Ohio App.2d 137, 142, 6 O.O.3d 101, 104, 368 N.E.2d 328, 331–332. Therefore, an award of attorney fees will not be sustained either by the denial or reversal of an award of punitive damages. *Ferritto v. Olde & Co., Inc.* (1989), 62 Ohio App.3d 582, 588, 577 N.E.2d 101, 105. Thus, in a tort action, an award of attorney fees is inextricably intertwined with an award of punitive damages. This principle was recognized by the Ohio Supreme Court in *Digital & Analog Design Corp. v. N. Supply Co.* (1992), 63 Ohio St.3d 657, 662, 590 N.E.2d 737, 742, where the court explained:

"The award of attorney fees, although seemingly compensatory and treated as such in the model jury instruction, does not compensate the victim for damages flowing from the tort. Rather, the requirement that a party pay attorney fees under these circumstances is a punitive (and thus equitable) remedy that flows from a jury finding of malice and the award of punitive damages. There is no separate tort action at law for the recovery of attorney fees under these circumstances. Without a finding of malice and an award of punitive damages, plaintiff cannot justify an award of attorney fees, unless there is a basis for sanctions under Civ.R. 11."

The *Digital* court then held, at paragraph three of the syllabus:

"In view of the public policy of this state that favors jury determination of issues of liability, as evidenced by the General Assembly passage of R.C. 2315.21 and its amendment to R.C. 2315.18, a trial court must submit to a jury the issue of whether attorney fees should be awarded in a tort action. The amount of those fees, however, shall be determined by the trial judge, who may, in his or her discretion, submit the question of the amount of the fees to the jury."

Thus, a trial court has some discretion in deciding whether to submit the issue of the amount of attorney fees to a jury after liability for those fees is determined. Nonetheless, the Ohio Supreme Court also made plain the fact that a jury instruction which suggests that attorney fees flow from the tort itself is an improper statement of the law.

Here, the trial judge's instruction to the jury was such that attorney fees were categorized as compensatory damages, *i.e.,* damages flowing from the tort

and not from an award of punitive damages.[4] Thus, any part of the compensatory damages attributable to appellees' attorney fees was erroneously awarded, thereby tainting the entire damages award.[5]

Lamberjack's Assignment of Error VI is found well taken.

Notwithstanding the fact that none of the litigants to this proceeding objected to the trial court's instruction on riparian rights, the giving of that instruction was plain error that must be addressed in order to prevent a manifest miscarriage of justice. *Reichert,* 18 Ohio St.3d at 223, 18 OBR at 284, 480 N.E.2d at 805.

A trial court shall give only those instructions which constitute a correct statement of the law and which apply to those issues raised by the evidence adduced at trial. *Marshall v. Gibson* (1985), 19 Ohio St.3d 10, 12, 19 OBR 8, 10, 482 N.E.2d 583, 585.

In the case at bar, the pleadings and the evidence adduced at trial were relevant to the question of whether Lamberjack interfered with appellees' easement rights. There was no evidence offered to demonstrate that appellees and Lamberjack were riparian owners, that is, those who own lands bounding a watercourse. *Mallory v. Dillon* (App.1934), 18 Ohio Law Abs. 239. Indeed, the trial court found, as a matter of law, that the dredge cut was on Lamberjack's land. A claim of interference with riparian rights is not the same as a claim of interference with an easement right. A claim of interference with an easement has its own unique elements, burdens of proof, and remedies. See, *e.g.,* *Langhorst, supra.* Consequently, an instruction on riparian rights was so totally erroneous and misleading to the jury that it affected the basic fairness of the judicial system. Absent any other error made by the trial court, this error would be sufficient to warrant a reversal of the trial court's judgment.

The judgment of the Ottawa County Court of Common Pleas is reversed. This cause is remanded to that court for further proceedings not inconsistent with this decision. Appellees, the Griffins, the Aplings, and the Walterbusches, are ordered to pay the court costs of this appeal.

*Judgment reversed*
*and cause remanded.*

HANDWORK, GLASSER and MELVIN L. RESNICK, JJ., concur.

---

**4.** 1 Ohio Jury Instructions (1993), Section 23.70, Subsection 9, the suggested instruction on attorney fees in these circumstances, reads:

"If you decide that the defendant is liable for punitive damages, you must also decide whether or not the defendant is liable for the attorney fees of counsel employed by the plaintiff in the prosecution of this action."

**5.** Additionally, due to our disposition of Assignment of Error V, any damages award is a nullity.