OPINION
Defendant-appellant Ceil Scott appeals the December 29, 2000 Judgment Entry of the Stark County Court of Common Pleas which found her guilty of one count of possession of cocaine, one count of trafficking in cocaine, and sentenced her accordingly. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE CASE AND FACTS
On April 19, 1999, the Stark County Grand Jury indicted appellant with one count of possession of cocaine, in violation of R.C. 2925.11(A), and one count of trafficking in cocaine, in violation of R.C. 2925.03(A). On May 11, 1999, appellant entered a plea of guilty to both counts. Prior to sentencing appellant moved the court to allow her withdraw her guilty pleas. The trial court denied appellant's motion and sentenced her to two years of community control on both counts. Thereafter, appellant appealed the trial court's denial of her motion to vacate her plea. In an August 7, 2000 Judgment Entry and Opinion, this Court reversed the decision of the trial court and remanded the matter, instructing the trial court to conduct a hearing on appellant's motion to vacate her plea. On remand, the trial court permitted appellant to vacate her plea and set the case for trial.
At trial, two Canton undercover police officers testified they gave appellant $20 in exchange for a rock of crack cocaine. After arresting appellant, the officers found an additional piece of crack cocaine in appellant's pocket.
After hearing all the evidence, the jury found appellant guilty of both counts. In a December 29, 2000 Judgment Entry, the trial court found appellant guilty of one count of possession of cocaine, and one count of trafficking in cocaine. The trial court sentenced appellant to credit for all time served and released her without restrictions. It is from this judgment entry appellant prosecutes her appeal, assigning the following as error:
 THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO CONTINUE.
 THE APPELLANT'S RIGHT TO FAIR AND IMPARTIAL JURY WAS VIOLATED BASED UPON THE NUMBER OF MEMBERS OF THE VENIRE AFFILIATED WITH POLICE.
 THE APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL DUE TO THE FACT THAT HER ATTORNEY ALLOWED HER TO TESTIFY AFTER SHE HAD ADMITTED THE CRIME TO THE COURT OUT OF THE HEARING OF THE JURY.
 I
In her first assignment of error, appellant maintains the trial court erred in denying her motion to continue. We disagree.
The grant or denial of a continuance rests in the trial court's sound discretion.[1] In order to find an abuse of that discretion, we must determine whether the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment.[2] When determining whether the court's discretion to grant a continuance has been abused, a reviewing court must balance the interests of judicial economy and justice against any potential prejudice to the moving party.[3] The objective factors to be considered by the trial court in assessing the propriety of a motion for continuance include:
 . . . the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the [moving party] contributed to the circumstance which gives rise to the request for a continuance; and the other relevant factors, depending on the unique facts of each case.[4]
As noted in the Statement of Facts, supra, this Court remanded the original appeal on August 7, 2000 for hearing on appellant's motion to withdraw her guilty plea. On August 18, 2000, the trial court appointed Attorney Angela Stone to represent appellant. In a September 11, 2000 Judgment Entry, the trial court set a trial date of October 23, 2000. Although there is no specific entry of appearance, it appears Attorney Asper assumed representation of appellant at the October 16, 2000 pretrial. At that pretrial, the trial court noted the trial remained set for October 23, 2000.
In an October 18, 2000 Judgment Entry, the trial court noted appellant had expressed that she was without funds and unable to employ counsel and thereby appointed Attorney Jose Iborra to represent appellant. We no there is not specific entry permitting the withdrawal of either Attorney Stone or Asper.
On October 23, 2000, the originally scheduled trial date, the trial court conducted a pretrial hearing. At that time, the trial date was continued until December 18, 2000. On the same day, Attorney Iborra filed his request for a bill of particulars and request for discovery. At a December 11, 2000 pretrial, the trial court noted there was no change in status and left the case set for trial for December 18, 2000. However, on December 11, 2000, Attorney Iborra filed a request for an evaluation of appellant's mental competence to stand trial. The trial court ordered appellant to be undergo a competency evaluation and continued the trial date until December 20, 2000. At the final pretrial on December 18, 2000, appellant appeared before the court with Attorney Iborra. The following exchange was placed on the record:
 THE COURT: And I was advised by the doctor that was chosen by the county and by the Court which does all of ours that Miss Scott refused to meet with him. An appointment was made.
 My understanding, Mr. Iborra, was that you personally notified Miss Scott of the time and date of the meeting and Miss Scott refused to go.
THE DEFENDANT: I was in Columbus.
THE COURT: Miss Scott refused or did not meet with him.
 The only way I could force Miss Scott to meet with doctor to revoke her bond and put her in the Stark County Jail, which the Court is going to do.
 Miss Scott's decision not to meet is a decision she made and she will have to live with the consequence of that decision. And that decision, is that her competency will not be evaluated, not because it wasn't requested, not because wasn't available, but because Miss Scott, on her own, made a decision not to abide and refused to appear or to notify.
 On Thursday, then, she filed a, motion to have this Court recused alleging this Court treated her unfairly or has bias against her. There are a number of things she alleged.
 On Friday last, which was December 15th, the Court received the entry from the Supreme Court of Ohio and the State's affidavit of disqualification by Ceil Scott seeking the disqualification of Judge Reinbold in the above-referenced case.
 Based upon that failure, the affidavit of disqualification was found not to be well taken and was denied. And it is ordered the Court shall proceed before Judge Reinbold, dated 15 December the year 2000, signed Thomas Moyer, Chief Justice of the Ohio Supreme Court.
 Therefore, the Court is going to continue to have this case set for Wednesday, the 20th of December.
 Miss Scott, if you are unhappy with your representation, you'll have one option, and that is to seek representation by your own means. Mr. Iborra is fully qualified to serve as your lawyer.
 THE DEFENDANT: I'll represent myself then or he can assist me.
 THE COURT: If that is a request, which hasn't been, the Court will go through procedure for that.
 THE DEFENDANT: I just met with him twice. He phoned me December 6th. You appointed him to me October, nine days, before trial. I feel that wasn't enough time to prepare.
 THE COURT: I understand your position, Miss Scott, and we're going to go forward on Wednesday. And if on Wednesday —
THE DEFENDANT: We haven't prepared a trial.
 THE COURT: I, What you ought to do is just let me finish talking, Miss Scott.
 Wednesday morning, then, Mr. Iborra, I'm going to ask you to [be] prepared to go forward.
 And Miss Scott, if on Wednesday morning you request that you be permitted to represent yourself, the Court will hear a brief request and the reasons that you do it and I'll make a decision at that time.
 But the least will happen, Mr. Iborra is I'll request you stay in the * * *
 THE DEFENDANT: Excuse me, Your Honor, but we both, basically, dealing with the same thing. I've only seen him twice. I know what happened. He don't. At least I could ask the questions that know which is the truth. I mean, he's not prepared I'm trying to rush to get subpoenas to him. I have other health problems, as well, you know. But I have serious health problems.
 THE COURT: I understand that, Miss Scott. And Wednesday morning your trial is set for 10:00 o'clock, I believe I'll see you Wednesday at 10:00 o'clock.
THE DEFENDANT: Yes, sir.
 MR. IBORRA: Your Honor, my client is requesting that I ask the Court for continuance.
THE COURT: Denied.
On December 18, 2000, Attorney Iborra subpoenaed a number of witnesses to testify at the December 20, 2000 trial on defendant's behalf. On December 20, 2000, the day of trial, the prosecutor amended the bill of particulars.
At the opening of the trial, defendant orally moved for a continuance. Shortly thereafter, the following exchange took place on the record between the trial court and Attorney Iborra:
 MR. IBORRA: With respect to some of the issues and my client's request for a continuance, I'll indicate to the Court that after the exchange of some phone messages, I noticed this matter was coming up for trial last week or a week ago. I don't have a calendar in front of me. I contacted her for the purposes of having her in.
 She canceled two appointments, but we did meet what would have been one week ago this past Saturday. We spent about two-and-a-half hours together. And at that time I was having difficulty gaining direct answers to some of my questions with respect to the facts.
 Because of our meeting, as the Court well knows, I filed a motion for a competency evaluation. At the same time I indicated to Miss Scott I absolutely needed a witness list. She referenced several witnesses she would like to bring in for character purposes. I didn't get into a discussion of whether or not that would ever become an issue.
 I do want to place on the record, although this Court granted that opportunity and scheduled the meeting for the purposes of the competency evaluation, Miss Scott did not appear for that. I also sent out letters in my file with respect to the fact she had been delinquent in providing me with copies of the witness list, one letter on December 11 and then again, I believe, on December 14th simply indicating that I had been promised that and it did not arrive.
 Yesterday at approximately 3:00 o'clock or so it did arrive at my office. My secretary quickly prepared the subpoenas and they were filed. I'm going to indicate to this Court, I'm not certain what any of those witnesses can testify to at this point.
 So with that in mind, I would concur in a request for a continuance for that purpose. I simply wanted the record to be clear. Although I requested this, it was not until yesterday this witness list was present. Everybody that was listed was subpoenaed.
 THE COURT: Well, I think the issue here is what witnesses are relevant to this criminal matter and what witnesses are not relevant to this criminal matter. And we're going to pick the jury today.
 And in the brief exchange I've had with Miss Scott, it appears to me that she is asking to bring in witnesses that don't have any bearing on this particular case. But that have a bearing on Miss Scott's overall belief, from what I gather, that there is a concerted conspiracy and that she intends to subpoena people who were at one time or another her probation officer or something along those lines.
 And that's why I want to put the names of those people on the list or in the record at the end. I will listen to who they are and for what reason they are going to be called, and then I will make a decision as to whether or not, pursuant to the Rules of Evidence, they are relevant witnesses or not.
 So we'll deal with that at the time, but right now we've got a jury waiting and I want to get them in and get them chosen.
Appellant maintains the trial court abused its discretion in denying appellant's motion to continue. We disagree.
The trial court specifically noted a trial had been set for some time. Further, as noted supra, the trial court had, in fact, continued the trial date on two separate occasions. While appellant did request a continuance three days before trial, both appellant's attorney and appellant continued to prepare for trial. Appellant gave a list of witnesses to her attorney and her attorney subpoenaed each of the witnesses for trial. On the day of trial, jurors and witnesses were present including witnesses for appellant.
We note the record clearly demonstrates appellant caused the circumstances giving rise to her request for a continuance. Specifically, appellant failed to meet with her attorney even after having scheduled meetings. Further, appellant failed to attend a scheduled competency evaluation. Accordingly, we cannot find the trial court abused its discretion in concluding a continuance, under these circumstances, was improper.
Finally, we note the trial court did not deny the motion for a continuance in toto. Rather, the trial court noted it would seat the jury, allow the State to present its evidence and then determine whether or not witnesses with relevant testimony were present. It appears the trial court did everything possible to evaluate the motion to continue, noting the length of delay requested whether other continuances had been requested; and received; the inconvenience to litigants, witnesses, opposing counsel, and the courts; whether the delay was for legitimate reasons; and whether appellant contributed to the circumstances giving rise to the request for a continuance. We find no abuse of discretion in the trial court's decision.
Appellant's first assignment of error is overruled.
 II
In her second assignment of error, appellant maintains she was denied the right to a fair and impartial jury because the venire was overly representative of the police population in Stark County. Specifically, appellant maintains twelve potential jurors had some affiliation with police officers, of which seven were eventually seated on the jury. We disagree with appellant's contentions.
The Sixth and Fourteenth Amendments to the United States Constitution guarantee a defendant's right to have a jury chosen from a fair cross-section of their community.[5] However, this requirement of a fair cross-representation of the community need not be interpreted to mean the array of the members of the venire consist of an exact cross-section of the community.[6] Furthermore, as the Ohio Supreme Court stated in State v. Strodes (1976), 48 Ohio St.2d 113, 115-116, vacated as to the death penalty, (1978), 438 U.S. 911:
 Under the United States Constitution, a defendant is entitled not to a perfect cross section of citizens for the jury panel, but only to panels selected by the best method that thoughtful [individuals], who are cognizant of the practicalities of selection and the inherent problems involved, have been able to develop. Unless prejudice to the defendant or the systematic and intentional exclusion of a group is shown, we will not reverse a judgment because of minor and technical defects in jury-selection procedures.[7]
"[G]roups defined solely in terms of shared attitudes that would prevent or substantially impair members of the group from performing one of their duties as jurors * * * are not `distinctive groups' for fair-cross-section purposes.[8] The array of the venire need not reflect an exact cross section of the community." State v. Strodes
(1976), 48 Ohio St.2d 113, death penalty vacated (1978), 438 U.S. 911,98 S.Ct. 3135, 57 L.Ed.2d 1154.Appellant herein never raised the issue of over-representation of those affiliated with the police at trial, therefore, appellant has waived any complaint absent plain error.
Crim. R. 52(B) provides:
 (B) Plain Error. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.
Notice of plain error under this rule is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. We note appellant does not claim that systematic or intentional exclusion occurred in this case.[9] Neither does appellant argue any over representation was intentional or systematic.
By appellant's own admission, the seven jurors who had some affiliation with police officers and were seated on the jury each indicated he or she could be fair. Accordingly, we find no plain error in the makeup of the jury or of the venire.
Appellant's second assignment of error is overruled.
 III
In appellant's third assignment of error, she maintains she was denied effective assistance of counsel because her attorney permitted her to testify after she had admitted a crime to the court, albeit out of the hearing of the jury. We disagree.
The standard of review of an ineffective assistance of counsel claim is well-established. Pursuant to Strickland v. Washington (1984),466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 673, in order to prevail on such a claim, the appellant must demonstrate both (1) deficient performance, and (2) resulting prejudice, i.e., errors on the part of counsel of a nature so serious that there exists a reasonable probability that, in the absence of those errors, the result of the trial court would have been different.[10]
In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential.[11] Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists that counsel's conduct fell within the wide range of reasonable, professional assistance.[12]
In order to warrant a reversal, the appellant must additionally show he was prejudiced by counsel's ineffectiveness. This requires a showing that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different.[13] A reasonable probability is a probability sufficient to undermine confidence in the outcome.[14]
Because appellant initially wanted to represent herself, the trial court took breaks after each of the State's witnesses to permit appellant an opportunity to discuss any questions she wanted to be asked of the witnesses with her attorney. During such breaks, the jury left the courtroom. After the testimony of Det. Geiger, such a conference took place. At that time, the following exchange took place on the record:
THE COURT: The question is?
 THE DEFENDANT: I had asked them for five dollars and a ride home. And she said cool. And when I got in the car I had a rock in my mouth. And I said, well, you drop me out home. And she kept hollering give me a rock and she hit me. And I swallowed it. And I was hocking and she grabbed me out the car and I got choked.
 THE COURT: We're not going to bring that up because you are admitting to the jury you had crack in your mouth.
* * *
When testifying on direct examination, appellant testified:
 Q. Let me go back prior to the altercation when you tried to get out of the car, inside the car when they were asking. Had they ever got anything from you or did you ever give them anything inside the car?
 A. Will it implicate myself? It was in my mouth like here (indicating). And when we got to cussing I swallowed it. And when we got to cussing — if I don't get implicated — but I had it when I came out the house. I had it right like that (indicating).
 Q. So, Ceil, if I ask you the question did you hand them anything inside the car —
A. No. Because it stayed in my mouth.
* * *
 Q. Ceil, at any time either in the car or at the station did they find crack cocaine on you?
 A. No, sir. There was like one rock. I had it like that walking out. Well, when I got out I had it like this, you know. I was talking like this (indicating). And when we got to tussling and when she put that blow right there, I swallowed it. She did it with the blow.
Appellant maintains her trial court was ineffective in failing to advise her of the implications of taking the stand on her own behalf in light of the above referenced outburst in open court. Appellant argues if defense counsel had explained her testimony "would seal her conviction, she likely would not have testified."[15]
It is clear to this Court appellant's trial counsel did, in fact, advise appellant not to testify on her own behalf.
Specifically, appellant's attorney stated on the record:
 Your Honor, I've spent several minutes discussing that issue with my client. Against my advise — and I strongly advised her not to take the stand in this case. The reason behind that is, obviously, Ms. Scott has somewhat of a criminal history she can be impeached by. Also, it may open the door to other character issues I believe would be against her interest and would best kept outside the hearing of the jury. I explained to her the rules of evidence provide for — basically that not only rules of evidence but her constitutional rights provide this information be held from the jury. Against my advice she has indicated to me she absolutely wants to take the stand in this case.[16]
Appellant maintains the record does not demonstrate trial counsel informed appellant that because she had just confessed to the court she possessed cocaine, she would "undoubtably be convicted if she testified" and that "her testimony would seal her conviction." We presume appellant maintains she was not advised her testimony would subject her to cross-examination and/or some elicitation of the statement she previously made in open court that she had cocaine in her mouth.
Appellant can point to no affirmative record demonstration trial counsel did not inform his client of the potential for cross-examination and/or the jury hearing evidence appellant admitted she had a rock of crack cocaine in her mouth if she should testify. This fact, in and of itself, would be sufficient to defeat a claim of ineffective assistance counsel on direct appeal.
However, we also note pursuant to the second prong of Strickland,
appellant cannot show there is a reasonable probability that but for counsel's alleged unprofessional errors, the result of the proceeding would have different.[17]
Notwithstanding appellant's outbursts, the State also presented the testimony of Det. Danny McCartney, and Det. Deborah Geiger. Det. McCartney testified he and Det. Geiger gave appellant $20 to purchase a rock of crack cocaine. Appellant accepted the money from the detectives, entered a residence on 7th St. NW, in Canton, Ohio. When she left the house, appellant got into a car with the detectives. The detectives drove a short distance away and appellant took a rock of crack cocaine out of her pocket. The detectives further testified they found another rock of crack cocaine in appellant's right shirt pocket.Det. Geiger testified appellant agreed to take her to a place and purchase a rock of crack cocaine. Det. Geiger also testified appellant entered the a residence with twenty dollars Det. Geiger had given her. After appellant came back out of the house, appellant got into the car with the detectives. When Det. Geiger asked for the cocaine, she witnessed appellant take a rock of crack cocaine from her breast pocket and attempt to break the piece in half. At that time, the officers placed appellant under arrest. Det. Geiger also testified a subsequent search of appellant revealed another piece of crack cocaine, in appellant's shirt pocket.
Based upon this testimony, we find there was no reasonable probability the outcome of appellant's trial would have been different had she not testified.
Appellant third assignment of error is overruled.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the December 29, 2000 Judgment Entry of the Stark County Court of Common Pleas is affirmed.
Costs assessed to appellant.
Hon. W. Scott Gwin, P.J. Hon. William B. Hoffman, J. Hon. John W. Wise, J. concur.
[1] State v. Unger (1981), 67 Ohio St.2d 65.
[2] Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, State v. Gill, (July 20, 2000), Coshocton App. No. 99CA020, unreported, 2000 WL 1020700.
[3] Griffin v. Lamberjack (1994), 96 Ohio App.3d 257, 264.
[4] State v. Unger, supra, at 67-68.
[5] Duren v. Missouri (1979), 439 U.S. 357; State v. Puente (1982),69 Ohio St.2d 136, 138.
[6] Swain v. Alabama (1965), 380 U.S. 202; State v. Wilson (1972),30 Ohio St.2d 199, 202.
[7] Citations omitted.
[8] Lockhart v. McCree (1986), 476 U.S. 162, 174.
[9] Duren v. Missouri (1979), 439 U.S. 357, 99 S.Ct. 664,58 L.Ed.2d 579; State v. Johnson (1972), 31 Ohio St.2d 106, 114.
[10] State v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373; Statev. Combs, supra.
[11] Bradley, 42 Ohio St.3d at 142.
[12] Id.
[13] Bradley, supra at syllabus paragraph three.
[14] Id.
[15] Appellant's Brief at 11.
[16] Tr. at 240-241.
[17] Strickland at 694; State v. Bradley (1989), 42 Ohio St.3d 136, para. 3 of the syllabus.