[Cite as *Am. Surface Solutions, L.L.C. v. N. Am.*, 2019-Ohio-2909.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

AMERICAN SURFACE SOLUTIONS,     :
L.L.C.,

        Plaintiff-Appellee,     :

                               No. 107225

        v.     :

NICHOLAS NORTH AMERICA,     :
ET AL.,

        Defendants-Appellants.     :

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** July 18, 2019

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-17-875451

### *Appearances:*

Bradley Hull, *for appellee.*

James Alexander, *for appellant.*

KATHLEEN ANN KEOUGH, J.:

{¶ 1}   Defendants-appellants, Nicholas North America ("North America"), and SteepleJacks of America, L.L.C. ("SteepleJacks") (collectively "appellants"), appeal the trial court's decision entering judgment against them and in favor of plaintiff-appellee, American Surface Solutions, L.L.C. ("appellee" or "American

Surface"). For the reasons that follow, we reverse the trial court's judgment and remand for further proceedings.

{¶ 2} In February 6, 2017, American Surface, through its owner Justin Morales ("Morales"), filed a complaint against appellants, Christopher Hardin, American Surface Solutions Group, L.L.C., Network Solutions, L.L.C., and Citizens Financial Group, a.k.a. Citizens Bank, raising causes of action for fraud, tortious interference with business relations, negligence with willful and wanton misconduct, negligence, civil theft, conversion, deceptive trade practices, unjust enrichment, and fraud in the inducement. The complaint arises out of allegations that Hardin, without authority, contracted and engaged in work under the guise of American Surface, but retained all profits and incurred debts. It was alleged that Hardin's grandfather, North America, facilitated, perpetuated, and concealed Hardin's conduct by establishing a business similar in nature and name to that of American Surface, and allowing Hardin to utilize North America's business, SteepleJacks, as his business operations. American Surface claimed that based on appellants' conduct, they were liable for expenses incurred from unpaid invoices and work not being completed and damage to the business's reputation.

{¶ 3} On the same day that the complaint was filed, American Surface sought and obtained a temporary restraining order ("TRO") against appellants, including a restraint against bank accounts belonging solely to SteepleJacks. Subsequently, in March 2017, the parties relevant to this appeal, reached an

agreement regarding the content of the TRO and it was dismissed; the TRO remained in effect against Hardin.

{¶ 4} At the February 8, 2018 final pretrial, the trial court granted appellants' counsel's oral motion to withdraw. The record reflects that at the hearing the trial court warned appellants that a continuance of the February 28 trial would not be granted. Moreover, the trial court advised that although North America could represent himself, he could not represent SteepleJacks.

{¶ 5} Two days prior to trial, new counsel for appellants filed a notice of appearance and also requested a continuance of trial. The motion to continue was denied the following day. On February 28, the day of trial, appellants appeared with counsel, who stated that his presence was for the limited purpose of seeking a continuance. He indicated that he had been recently retained and was not prepared to go forward with trial; he would need a continuance. The trial court noted that the continuance was previously denied. It also stated on the record that North America was advised at the final pretrial that no continuances of trial would be granted and that he could not represent SteepleJacks during the proceedings. Because counsel was unable to proceed and the continuance was denied, North America represented himself pro se.

{¶ 6} Additionally, because SteepleJacks was not represented by counsel, the trial court proceeded to conduct a "default" hearing against SteepleJacks. Following the presentation of evidence, the trial court entered a general "default" judgment" in favor of American Surface and against SteepleJacks in the amount of

$72,066.61. The court held the determination of punitive damages in abeyance until after the trial on the claims against North America.

{¶ 7} A jury was empaneled and American Surface's claims solely against North America were presented to the jury with the following testimony and evidence.

{¶ 8} Morales testified that he owns "American Surface Solutions, L.L.C.," a rubber pour-in-place business, that was informally started in 2015. He officially registered his business with the Ohio Secretary of State on May 5, 2016. According to Morales, he created the name, logo, and graphics in 2015. He stated that he created the name "American Surface Solutions" from his previous concrete company named "Resurfacing Solutions." He stated that he got into the field of rubber resurfacing through his friend, Hardin, who used to be in the pour-in-place business prior to Hardin's incarceration for getting paid to do jobs, but not performing the work. Hardin's prior business was named "American Safety Surface." According to Morales, Hardin's company went under due to Hardin's conduct and Morales thought he could help out his friend. Plaintiff's exhibit No. 9 was an email sent in February 2014 from Hardin's email "americansurface@aol.com" to Morales asking about whether he "ever look[ed] over my business and see what u wanna do? Busy season starts in a week or two."

{¶ 9} Morales testified that he believed that Hardin did not act in good faith in attempting to generate business on behalf of American Surface. He stated that

they never agreed on distribution of profits and disagreed on "the cut" Hardin should receive from jobs performed.

{¶ 10} In fact, Morales discovered in January 2017 that Hardin was doing business under the guise of American Surface. Hardin created business cards and letterhead with American Surface's logo, but they did not contain any contact information relating to American Surface — the address was that of SteepleJacks. The business cards reflected that Hardin was the "owner/project manager" of American Surface.

{¶ 11} Morales testified about a contract that was obtained through discovery purportedly between American Surface and Fasting Enterprises, a company in Washington D.C. The contract provided that the proposed start date would be October 17, 2016, with an estimated finish date of December 17, 2016. The contract was executed by "Chris Morales, V.P., American Surface Solutions." The contract was for $114,760. An accompanying letter provided that American Surface has "been in business for 10 years." Morales stated that this statement was not true as to his company; only Hardin's prior company would qualify. Additionally, Morales stated that the references that were listed were not associated with American Surface.

{¶ 12} Morales stated that he did not authorize the contract and that his business did not receive any compensation from Hardin under this contract. Once he discovered the existence of the contract, Morales had to take out a loan to correct Hardin's work and was damaged $7,000.

**{¶ 13}** Morales also testified about a job that Hardin contracted for and partially completed at a children's learning center in Indiana. Morales testified that he became aware of the contract when the center's coordinator contacted him and advised him that the work was not completed, but that the money was paid. Based on the information that he was provided, Morales testified that Hardin prepared an estimate on March 31, 2016, for the center. The contract was signed by the center on May 4, 2016, and by Hardin on May 10. It contained Hardin's personal contact information and a website "www.americansurfacesolutions.com, but was faxed between the parties using SteepleJacks' fax number. The contract provided for removal of the existing wooden structure, the purchase and installation of new playground equipment, and repair and resurface of an existing play area. The total contract price was $68,120.

**{¶ 14}** Morales testified that the center issued two checks payable to "American Surface Solutions." The checks were issued on May 5, 2016, and September 30, 2016, in the amounts of $42,040 and $20,750, respectively and endorsed by "American Surface Solutions." According to bank records, the May check was deposited into a Citizen's Bank Account owned by "Nicholas North America, d.b.a. American Surface Solutions." Morales testified that he never received, endorsed, or deposited these checks.

**{¶ 15}** Morales also discovered at this time that he did not own the website domain "www.americansurfacesolutions.com." According to Morales, Hardin encouraged him to use the host company "Big Tuna" to set up a website. Morales

testified that he was paying for this service, but discovered that the domain name "americansurfacesolutions.com" was registered to SteepleJacks on December 30, 2015. When he asked Hardin to change ownership of the domain name to him, Hardin told him "nice try" and laughed it off. Accordingly, Morales was forced to create a new website: "americansurfacesolutions.net."

{¶ 16} Morales told the jury about negative reviews that American Surface received on various web-based search engines. Both reviews warned about doing business with American Surface and Hardin stating that money was paid, but no work was ever performed.

{¶ 17} Morales gave testimony about a truck rental from Penske that he did not authorize. According to Morales, he was contacted by Penske for an unpaid balance of $2,276.61 for a truck rental to "American Surface Solutions." Based on the records he received through discovery, Morales stated that Hardin rented a Penske truck on two occasions — May 17 and 23, 2016. The rental agreement noted that the address for American Surface Solutions was the physical address of SteepleJacks. Morales stated that he did not pay the outstanding invoice — $2,276.61 was still due and owing.

{¶ 18} Morales also testified about bank records received through discovery. He stated that the Citizen's Bank Account, owned by "Nicholas North America, d.b.a. American Surface Solutions," was opened on March 3, 2016, and closed in June 2016. He stated that he did not authorize this bank account to be opened. The records show that the May check received from the Indiana learning center was

endorsed by American Surface Solutions and deposited into the account. According to Morales, the records reveal that money was transferred between this account and accounts owned by North America and SteepleJacks. Additionally, checks were issued from this account payable to Hardin, cash, and other individuals. According to Morales, the signatures on the signature line of the checks were the signatures of "Nick America" and Hardin; no checks were endorsed by North America. Morales denied that he ever authorized any deposits, transfers, or payments from this account.

## North America's Role

{¶ 19} Morales testified that North America did not have any authority to act on behalf of American Surface both before and after it was formally organized. According to Morales, he sued SteepleJacks and North America because the money that Hardin collected doing jobs under the guise of American Surface was deposited into accounts that North America had control over, including the Citizens Bank account, and Hardin used SteepleJacks' business address and operations — the business that North America owned.

{¶ 20} Morales further stated that through discovery he obtained a handwritten document that indicated how Hardin and North America would split the profits from American Surface Solutions. Morales indicated this was how Hardin was going to "pay back" North America.

## Damages

{¶ 21} Morales testified that he suffered damages in the amount of $72,066.61 based on three separate incidents. First, he stated that $62,790 was paid to "American Surface Solutions" from the Indiana learning center — the job was performed under his company name, but not paid to his company. He stated that he had to take out a loan to correct the job that Hardin contracted for with Fasting Enterprises, but stated he only suffered damage in the amount of $7,000. Finally, he stated that he suffered damages in the amount of $2,276.61 for the unpaid Penske bill.

## North America's Testimony

{¶ 22} North America was called as a witness by American Surface on cross-examination. He testified he was trying to help his grandson, Hardin, with a business venture. North America testified that he formed "American Surface Solutions" in December 2015, which is when he admitted that he owned the domain name "americansurfacesolutions.com" and that he did not give it to Hardin to turn over to Morales even after North America was made aware of the situation. North America testified that he formally established "American Surface Solutions Group" with the Ohio Secretary of State for his grandson, who operated the business solely on his own. North America stated that his grandson had 12-years of experience in the rubber pour-in-place field and that his grandson previously ran a business — "American Safety Surface" doing this type of work. He stated he set up the business

for his grandson who had just been released from jail. And because of Hardin's felony record, he could not get any money to open the business or bank accounts.

{¶ 23} North America stated that he know about Morales's company, American Surface in December 2015. He agreed that Morales did not authorize him to create the business "American Surface Solutions Group" or do anything associated with American Surface. He further admitted that his company, SteepleJacks, is not in the rubber pour-in place business.

{¶ 24} Morales rested his case pending admission of exhibits, which North America did not object. After a prompt from the trial court, North America moved for a directed verdict, which the court granted on the fraud in the inducement claim. Additionally, plaintiff dismissed the civil theft claim. North America did not call any witnesses, including himself.

Verdict

{¶ 25} The jury entered a unanimous general verdict in favor of American Surface and against North America in the amount of $72,066.61. During the punitive damages phase of the trial, the jury heard testimony from Morales. A majority of the jury awarded punitive damages in favor of American Surface and against North America in the amount of $20,000. A majority of the jury also found that American Surface should be awarded attorney fees. The trial court then heard testimony from Morales and Attorneys Bradley Hull and Janet Volle regarding attorney fees. Following the testimony, the trial court modified the attorney fee request and awarded attorney fees in favor of American Surface and against North

America and SteepleJacks in the amount of $19,855.50.  The court order that the attorney fees be paid jointly and severally by North America and SteepleJacks.  The trial court also ordered punitive damages in favor of American Surface and against SteepleJacks in the amount of $20,000.

{¶ 26} Appellants now appeal, raising five assignments of error.  Additional relevant facts and procedural background will be discussed under the relevant assignment of error.

{¶ 27} As a preliminary matter, American Surface contends that the appeal should be dismissed as untimely.  We disagree.  On March 6, 2018, the trial court entered final judgment, following the jury verdict.  Appellants timely filed their motion for a new trial on April 3, 2018, — 28 days following the judgment.  *See* Civ.R. 59.  The trial court denied the motion on April 25, 2018; the appeal was filed on May 23, 2018.  Accordingly, the appeal was timely.

## I.  Temporary Restraining Order

{¶ 28} In their first assignment of error, appellants contends the trial court erred in issuing a prejudicial temporary restraining order that prejudiced them.  Specifically, appellants contend that the motion seeking the restraining order was not in compliance with Civ.R. 65(A) because it was issued without (1) notice; (2) certification why the TRO should be issued without notice; (3) certification by the attorney regarding the efforts made to notify appellants; and (4) posting a bond.  Appellee contends the motion was in compliance, but even if it was not, the issue is moot because appellants ultimately agreed to the restraining order.

{¶ 29} Even if we would agree with appellants that the request seeking the TRO was not in compliance with Civ.R. 65(A), the issue is moot. In this case, the TRO expired on March 14, 2017, when the parties reached an "agreement," whereby the TRO was dismissed against North America, SteepleJacks, Network Solutions, and Citizens Financial Group. Accordingly, once the TRO expired or was dismissed, the controversy surrounding the order became moot. *State ex rel. Celebrezze v. Bd. of Cty. Commrs.*, 32 Ohio St.3d 24, 26, 512 N.E.2d 332 (1987), fn. 2 (injunction no longer in effect when it expired upon the resolution of the case; the issue of its propriety is moot); *McClead v. McClead*, 4th Dist. Washington No. 06CA67, 2007-Ohio-4624, ¶ 14 (expiration of challenged order renders an appeal of that order moot). "Issues are moot when they present no actual, genuine, live controversy, the decision of which can definitely affect existing legal relations." *Kormanik v. Cooper*, 195 Ohio App.3d 790, 2011-Ohio-5617, 961 N.E.2d 1187, ¶ 12 (10th Dist.).

{¶ 30} Even if the issue was not moot and a claim that a live controversy exists based on the grant of the TRO, appellants have failed to demonstrate how they were prejudiced or what damages they sustained as a result of the TRO being issued. The general statement that the TRO "tied up the bank account for the business enterprise" is insufficient to prove that they were damaged as a result of the TRO being issued.

{¶ 31} Accordingly, the first assignment of error is overruled as moot.

## II. Motion to Continue

{¶ 32} In their second assignment of error, appellants contend that the trial court abused its discretion in failing to continue the trial.

{¶ 33} We review the decision to deny a motion to continue for an abuse of discretion. *Harmon v. Baldwin*, 107 Ohio St.3d 232, 2005-Ohio-6264, 837 N.E.2d 1196, ¶ 15. Our review requires this court to apply a balancing test — weighing the trial court's interest in controlling its own docket and the public's interest in the prompt efficient dispatch of justice versus any potential prejudice to the moving party. *State v. Unger*, 67 Ohio St.2d 65, 67, 423 N.E.2d 1078 (1981). The following factors should be considered by a trial court when considering a motion for a continuance: (1) the length of the delay requested; (2) whether other continuances have been requested and received; (3) the inconvenience in litigants, witnesses, opposing counsel, and the court; (4) whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; (5) whether the moving party contributed to the circumstances that caused the request for a continuance; (6) and other relevant factors depending on the circumstances of the case. *See Unger* at 67-68.

{¶ 34} Moreover, because there are no "mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process * * * the answer must be found in the circumstances present in every case, particularly the reasons presented to the trial judge at the time the request is denied." *Unger* at 67, quoting *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964).

{¶ 35} American Surface contends that the trial court did not abuse its discretion because the motion for continuance was untimely pursuant to the court's local rules. Moreover, it asserted that appellants proceeded with firing their attorney at the final pretrial, despite being warned that (1) no continuance would be granted (2) any new counsel would need to be prepared to go forward with trial twenty days later, and (3) that if SteepleJacks did not have any attorney, it would be in default and unable to defend itself.

{¶ 36} The record reveals that the trial court allowed appellants' counsel to withdraw at the final pretrial held on February 8. Whether the basis for counsel withdrawing was because appellants fired their attorneys or whether this was a voluntary attorney-client separation is unclear from the record; no transcript or App.R. 9(C) statement has been submitted to this court revealing the exact circumstances surrounding the withdraw. However, what we can discern from the February 28 transcript and the arguments from the parties on appeal, that on February 8, North America was apprised that no continuances would be granted and he could not represent SteepleJacks at trial.

{¶ 37} Appellants contend that the trial court abused its discretion in denying its request for a continuance because the *Unger* factors weighed in favor of granting the continuance. In support of their argument, appellants cite to this court's decision in *Swanson v. Swanson*, 8th Dist. Cuyahoga No. 90472, 2008-Ohio-4865.

{¶ 38} In *Swanson*, a mother appealed the trial court's judgment that designated the father the residential parent of the parties' child. Twenty days before trial, mother's counsel filed a motion to withdraw, asserting that mother had fired him. Twelve days before trial, the court permitted mother's counsel to withdraw, and six days before trial, mother filed a motion to continue because she was unable to obtain substitute counsel. Mother stated in her motion to continue that "she had made numerous attempts to hire counsel but her phone calls were not returned." *Id.* at ¶ 6. The trial court denied her motion "and forced the mother to proceed pro se." *Id.* Mother appealed and asserted that the trial court abused its discretion by denying her motion to continue.

{¶ 39} This court found that "numerous factors weighed in favor of granting a short continuance to allow the mother to obtain new counsel." *Id.* at ¶ 15. This court first observed that the case had been pending for approximately eight months, the court had set the trial only three months before mother requested her continuance, and she had not requested a prior continuance. This court noted that "the mother requested the continuance solely to obtain new counsel" and not "to delay the proceedings." *Id.* at ¶ 16. Additionally, this court determined that a short continuance would not have inconvenienced the parties, except for rescheduling. This court further recognized that "the mother's conduct of firing her attorney contributed to the need for the continuance," but stated that "this alone does not warrant the denial of her motion." *Id.* at ¶ 18. This court thus determined that "the

*Unger* factors weighed strongly toward granting the mother's motion for a continuance." *Id.* at ¶19.

{¶ 40} We find *Swanson* persuasive. After reviewing the *Unger* factors, the facts of the case, and the procedural history, we find that the trial court abused its discretion in dying appellants' motion for a continuance of trial.

{¶ 41} It was unreasonable for the trial court to assume that any counsel appellants would have retained would be properly prepared to go forward with trial in twenty days. This is a factor that a trial court must take into consideration in determining whether to grant a motion to withdraw. Especially in light of the trial court's statement that it would not grant any continuance. Ohio courts have repeatedly recognized that a trial court abuses its discretion when it allows an attorney to withdraw from the case on or near the day of trial and then denies the unrepresented party's motion for a continuance. *See, e.g., Griffin v. Lamberjack*, 96 Ohio App.3d 257, 644 N.E.2d 1087 (6th Dist.1994).

{¶ 42} Moreover, much like in *Swanson*, the *complaint* was filed approximately a year prior to trial, and much of the delay into case was attributed to American Surface's attempt to secure service on and maintain its case against Hardin. At all times appellants were represented by counsel and defended the action, including filing motions to compel discovery and filing a counterclaim.

{¶ 43} Additionally, the record reflects that appellants never requested a continuance of trial. Moreover, the length of the requested continuance was a mere thirty days to prepare for a case, that the trial court admitted was "document heavy."

Finally, in counsel's written motion for a continuance and oral request, it determined that appellants had valid defenses to plaintiff's complaint. The request for the continuance was not for dilatory or frivolous purposes.

{¶ 44} Although it can be argued that appellants' actions were the cause for the continuance because of an allegation that they fired their counsel at the final pretrial, the record does not reveal the nature for counsel orally requesting to withdraw. And as this court noted in *Swanson*, the firing of counsel alone does not warrant a denial of a motion to continue.

{¶ 45} Most importantly, once it was discovered that the principal defendant, Hardin, had settled his case with plaintiffs on the eve of trial, without any notification to appellants, the prejudice that this caused to appellants is apparent based on the allegations in the complaint. This development was not disclosed until the day of trial. Neither the trial court nor the appellants could have contemplated this settlement at the time the trial court issued the blanket order on February 8 or when it summarily denied appellants' written motion for a continuance two days prior to trial. This prejudice outweighed the trial court's desire to control its docket on a case that was only pending for approximately one year that involved multiple defendants and complex causes of action. The *Unger* factors weighed in favor of a continuance, which the trial court should have granted. It was unreasonable not to do so.

{¶ 46} The second assignment of error is sustained. The judgments against SteepleJacks and North America are vacated and the case is remanded to the trial court for further proceedings.

{¶ 47} Having sustained the second assignment of error, the remaining assignments of error challenging the individual judgments are hereby rendered moot.

{¶ 48} Judgment reversed and remanded.

It is ordered that appellants recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KATHLEEN ANN KEOUGH, JUDGE

EILEEN T. GALLAGHER, P.J., CONCURS;
EILEEN A. GALLAGHER, J., DISSENTS WITH SEPARATE OPINION


EILEEN A. GALLAGHER, J., DISSENTING:

{¶ 49} I respectfully dissent from the opinion of my learned colleagues.

{¶ 50} I do not believe that the trial court abused its discretion in denying an eleventh-hour motion for a trial continuance.

{¶ 51} This matter was originally filed on February 6, 2017 with active motion and discovery practice by all parties. Trial commenced over one year later.

{¶ 52} It is the bailiwick of the trial court to schedule its docket. We know not the reason that counsel withdrew their representation of defendant as the record does not so reflect. We do know, however, that there were off-the-record discussions with the court regarding same and that the court indicated at the time that there would be no continuances of the trial and, therefore, if they chose new counsel, said counsel would be required to proceed on the previously scheduled trial date.

{¶ 53} I would overrule this assignment of error.

{¶ 54} I do note that on March 2, 2018, the trial court entered a judgment of default against defendant SteepleJacks of America, L.L.C., in the amount of $72,066.61 plus statutory interest and attorney fees.

{¶ 55} Defendant SteepleJacks of America, L.L.C. was represented by counsel and actively participated in motion practice including the filing of an answer and counterclaim. Therefore, pursuant to Civ.R.55, default judgment was inappropriate. The trial court should have entered judgment based on an ex parte trial.