**FERRITTO, Exr., Appellee,**

v.

**OLDE & CO., INC., Appellant.**

[Cite as *Ferritto v. Olde & Co., Inc.* (1989), 62 Ohio App.3d 582.]

Court of Appeals of Ohio,
Cuyahoga County.

Nos. 55098, 57048.

Decided April 24, 1989.

*Larry G. Lillback* and *Donald H. Klingenberg,* for appellee.

*Bruce Tyler Wick,* for appellant.

JOHN V. CORRIGAN, Judge.

The defendant-appellant, Olde Discount Stockbrokers ("Olde & Co." or "Olde"), appeals the trial court's award of $15,500 in compensatory and punitive damages and attorney fees in favor of plaintiff-appellee, William Ferritto, executor of the estate of his deceased father, Alexander Ferritto.

In his complaint, the plaintiff-appellee claimed damages allegedly suffered by the decedent's estate as a result of the defendant's mishandling of the sale of the estate's stocks in Velcro Industries, a Canadian corporation, and Ohio Art Company. The plaintiff alleged that "the defendant has failed to procure the funds [from the sale of the stocks] and is doing so on the basis of fraud or malice * * *." Complaint at paragraph 6. The plaintiff-appellee prayed for

compensatory damages to cover the losses incurred by the estate, punitive damages for the defendant's claimed breach of fiduciary duty, and attorney fees.

In its answer, the defendant-appellant denied any liability, stating that "[p]laintiff has failed or refused to furnish defendant with documents necessary to complete the sale of the Velcro Industries stock and the Ohio Art Company stock, though defendant has requested that he do so." Defendant's Answer at paragraph 6. In addition to answering the plaintiff's claim, the defendant-appellee brought a counterclaim for $9,625 for damages allegedly sustained by the defendant-stockbroker as a result of the plaintiff's claimed breach of "his implied duty of cooperation to defendant by failing to furnish such documentation as to authority or ownership in a timely manner." Defendant's Counterclaim at paragraph 3.

The case was referred to arbitration; the panel of arbitrators found for the plaintiff in the sum of $4,937; the plaintiff appealed, seeking a trial de novo. Following a trial by jury, the jury returned a verdict of $15,500 against the defendant—$2,500 in actual damages; $5,000 in punitive damages; and $8,000 in attorney fees. During the course of the trial, the defendant agreed to withdraw its counterclaim, following the plaintiff's motion for dismissal of the counterclaim. The court filed its entry on the jury's award on October 26, 1987.

On November 9, 1987, the defendant filed a motion for judgment notwithstanding the verdict, or, in the alternative, motion for new trial. The defendant filed a notice of appeal on November 23, 1987. On December 31, 1987, the trial court overruled the defendant's post-judgment motion, after which, on January 17, 1988, the defendant filed an amended notice of appeal from both the October 26, 1987 judgment and the December 31, 1987 denial of the defendant's post-judgment motion.

On appeal, the appellant brings seven assignments of error. The first claims:

"I. The trial court erred in permitting improper 'expert' testimony."

The appellant contends that the trial court erred to the prejudice of the appellant in allowing the plaintiff's witness, Timothy Walsh, to testify as an expert. We find no merit to this contention.

Ohio Evid.R. 702 provides:

"Testimony by experts.

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness

qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

In the view of Wigmore, a witness's expertise "may have been attained, so far as legal rules go, in any way whatever; all the law requires is that it should have been attained." 2 Wigmore, Evidence (Chadbourn rev. 1979), Section 556, at 751. A witness is an expert, rather than a lay witness, when his opinion is based on his technical knowledge and experience. *Landskroner v. Pub. Util. Comm.* (1983), 5 Ohio St.3d 96, 97, 5 OBR 176, 177, 449 N.E.2d 760, 761.

Walsh fully explained his credentials as an expert to the jury. After he obtained his undergraduate degree from the University of Notre Dame in June 1979, Walsh started with Parker–Hunter, a full-service brokerage firm, in Pittsburgh, Pennsylvania. At the time of trial, he had worked in the securities business for over eight years. Walsh took a four-month training course and passed a standardized test, after which he became a member of the New York Stock Exchange. For more than five years, he had served as the assistant vice-president and branch manager of the Painesville, Ohio branch of Parker–Hunter.

Since he became a licensed stockbroker in December 1979, Walsh has received three higher level licenses, all within the area of the securities industry and management. As office manager of the Painesville, Ohio branch of Parker–Hunter, Walsh oversees all activities within the branch, including the management of accounts—his own accounts, and all other client accounts within the branch.

Walsh explained the difference between a full-service brokerage firm, such as Parker–Hunter, and a discount brokerage firm, such as Olde. He explained the essence of New York Stock Exchange Rule 405, which requires a broker to know his customer. He also explained the difference between documents needed in a transaction involving stock held in an estate, versus stock sold by an individual owner. No objection to these explanations was recorded.

Walsh distinguished a fiduciary account and an ordinary customer account and then explained why certain documents were needed in a fiduciary account involving the sale of securities from an estate and were not needed in the ordinary sale of securities. He further explained the difference between the sale of a domestic security and the sale of a stock in a Canadian corporation. No objection was recorded regarding Walsh's testimony on these matters.

Walsh also explained to the jury, without objection, the "five business day settlement rule," whereby a stock must be delivered, or paid for, within five business days of a transaction. If a brokerage firm is unable to produce the

stock within five days, the firm nonetheless is bound to fulfill the contract. As explained by Mr. Walsh:

"[I]t is the brokerage firm's responsibility to cover that contract within five business days and then they hope to recover it eventually from the client, but it is the brokerage firm's responsibility to cover that sale position."

Plaintiff's counsel then questioned the expert as to whether a broker's failure to fulfill the requirements for completion of a transaction was "reckless." On this question, counsel for the defendant objected, claiming that Walsh had not been qualified as an expert. The court overruled the objection and allowed the expert to be further qualified. To this challenge, Walsh explained that over his years as a broker, he had engaged in hundreds of estate transactions. He then explained the type of documentation necessary for a broker to transact from an estate account.

After further detailing his qualifications and experience, Walsh was asked whether defendant's broker, Thomas Dotts, in selling four hundred shares of stock from the Ferritto estate, when only two hundred shares were owned, and in selling this stock without proper documentation, had violated the standard of care of a stockbroker. Walsh responded, "Yes, absolutely, it was a dumb thing to do." Defense counsel objected, claiming that the witness had impermissibly drawn a legal conclusion in a matter for which he had not been properly qualified to render an opinion. The court overruled the objection, subject to cross-examination.

Walsh then qualified his answer, stating that it was not prudent for the Olde broker to sell the Ferritto estate stock under the circumstances, and that the broker did not have adequate documentation to sell either the Velcro stock or the Ohio Art stock at the time the defendant executed the sale. After explaining the term "good delivery,"[1] Walsh stated, without objection, that Dotts did not have good delivery with respect to either the Ohio Art stock or the Velcro stock at the time Olde sold the shares. Walsh opined that this was a violation of industry practice.

■ Thus, the evidence of record does not support the appellant's claim that Walsh was improperly permitted to testify as an expert under Evid.R. 702. Furthermore, contrary to the appellant's contention, the expert did not testify as to the ultimate question regarding liability. Rather, Walsh stated that, in his opinion, Dotts, the defendant's broker, recklessly violated the industry

---

1. Walsh explained, "Good delivery simply means that the stock my customer has given me is okay to be put into somebody else's name, that the proper documentation to effect the transfer is in place. That is what good delivery means."

standard of care by selling the shares of stock without first ascertaining, by proper documentation, the number of shares owned by the estate.

■ The appellant argues that the expert improperly addressed the ultimate issue—whether the defendant's broker was reckless in the legal sense. Although we find to the contrary as to the issue of "recklessness" being an ultimate issue, any error by the trial court in this matter is outweighed as to its prejudicial impact by the defendant's own expert, Ronald Rzconca, president of Temple Securities Corporation, agreeing on cross-examination, that Dotts was professionally reckless as a stockbroker in regard to the sale of both the Ohio Art stock and the Velcro stock. Rzconca agreed that Dotts was reckless on October 11, 1985, when he sold the two hundred shares of stock held in the names of Alexander and Edith Ferritto, without having a tax release in the name of Edith Ferritto, the decedent's also deceased wife; without having authority from the court in the name of Edith Ferritto; and without obtaining a death certificate in the name of Edith Ferritto. The defense recorded no objection to the testimony of Rzconca.

It is within the sound discretion of the court, on a case-by-case basis, to determine the admissibility of expert testimony. *State v. Williams* (1983), 4 Ohio St.3d 53, 4 OBR 144, 446 N.E.2d 444, syllabus. Finding no evidence that the trial court abused its discretion in this regard, we overrule the appellant's first assignment of error.

Assignments of error two and three argue:

"II. The trial court erred in awarding punitive damages.

"III. The trial court erred in awarding attorney fees."

■ The appellant-stockbrokerage firm challenges the jury's award of punitive damages and attorney fees to the plaintiff-appellee. The appellant contends that the evidence fails to establish a jury question on the issue of punitive damages, and that, consequently, the award of attorney fees also fails. We agree.

■ Punitive damages are available in tort actions which involve fraud, malice or insult. *Preston v. Murty* (1987), 32 Ohio St.3d 334, 334, 512 N.E.2d 1174, 1174 (citing *Roberts v. Mason* [1859], 10 Ohio St. 277, paragraph one of the syllabus). Attorney fees are recoverable as compensatory damages in an action where punitive damages are properly awarded. *Langhorst v. Riethmiller* (1977), 52 Ohio App.2d 137, 6 O.O.3d 101, 368 N.E.2d 328, paragraph three of the syllabus. As such, an award of attorney fees will not be sustained either by the denial or reversal of an award of punitive damages.

██ An award of punitive damages requires something more than a showing of mere negligence. *Leichtamer v. American Motors Corp.* (1981), 67 Ohio St.2d 456, 472, 21 O.O.3d 285, 295, 424 N.E.2d 568, 579. Key to the recovery of punitive damages in Ohio is a finding of malice. However, before a question of punitive damages can be submitted to the jury, there must be sufficient evidence of actual malice. *Detling v. Chockley* (1982), 70 Ohio St.2d 134, 24 O.O.3d 239, 436 N.E.2d 208.

In *Preston v. Murty* (1987), 32 Ohio St.3d 334, 512 N.E.2d 1174, the Ohio Supreme Court set out to eliminate the confusion generated from the many judicial interpretations seeking to define and describe the behavior that constitutes the "actual malice" sufficient to support an award of punitive damages. The court determined that "a positive element of conscious wrongdoing is always required." *Id.* at 335, 512 N.E.2d at 1176. The court held: "Actual malice, necessary for an award of punitive damages, is (1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, *or* (2) a *conscious disregard* for the rights and safety of other persons that has a great probability of causing substantial harm." (Emphasis added in part.) *Id.* at syllabus.

The court further provided that prior to submitting a claim for punitive damages to the jury, "a trial court must review the evidence to determine if reasonable minds can differ as to whether the party was aware his or her act had a great probability of causing substantial harm. Furthermore, *the court must determine that sufficient evidence is presented revealing that the party consciously disregarded the injured party's rights or safety.* If submitted to the jury, the trial court should give an instruction in accordance with the law we announce today." (Emphasis added.) *Preston*, 32 Ohio St.3d at 336, 512 N.E.2d at 1176.

The *Preston* standard for determining actual malice was enunciated by the Ohio Supreme Court on September 9, 1987. Trial on the instant case commenced on October 19, 1987. Accordingly, the law pronounced in *Preston* is controlling in the matter now before us.

In this case, the court twice overruled the defendant-appellant's motion to strike the plaintiff's claim for punitive damages. In a sidebar discussion with counsel for both parties, preserved on the record but outside the jury's hearing, the court explained to counsel: "Actual malice means anger, hatred, ill will, a spirit of *reckless disregard* of the consequences or legal right of others. * * * I realize that this is a close question, but I'm going to allow it to be submitted to the jury." (Emphasis added.)

Subsequently, the court instructed the jury on actual malice under the "reckless disregard" standard: "Actual malice means anger, hatred, ill will, a spirit of revenge, or reckless disregard of the consequences."

We find this instruction to be erroneous under the express directives given to trial courts by the Ohio Supreme Court in *Preston v. Murty*. The *Preston* standard, requiring an instruction on and finding of "conscious disregard," requires a greater showing of intent than does the "reckless disregard" standard.

We find that, on the evidence of record, this results in reversible error. The plaintiff failed to establish a jury question on the question of punitive damages under *Preston v. Murty* (1987), 32 Ohio St.3d 334, 512 N.E.2d 1174; the award of punitive damages must fail. Likewise, the award of attorney fees must also fail. See *Langhorst v. Riethmiller* (1977), 52 Ohio App.2d 137, 6 O.O.3d 101, 368 N.E.2d 328.

Accordingly, we sustain the second and third assignments of error, and reverse the trial court's award of $5,000 in punitive damages and $8,000 in attorney fees.

The appellant's fourth assignment of error claims:

"IV. The trial court's judgment is contrary to law and against the manifest weight of the evidence."

The appellant contends that the plaintiff failed to prove a causal relationship between the defendant's acts or omissions and plaintiff's claimed injuries. We find no merit to this contention.

A reviewing court will not reverse the trial court's judgment which is supported by competent, credible evidence going to all the essential elements of a case. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 411–412, 461 N.E.2d 1273, 1276. The weighing of evidence is primarily the role of the trier of fact. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus.

On a claim of negligence, the plaintiff must show that he was injured as a proximate result of the defendant's breach of a duty of care. *Strother v. Hutchinson* (1981), 67 Ohio St.2d 282, 285, 21 O.O.3d 177, 179, 423 N.E.2d 467, 469. Expert testimony may be required to establish the duty of care owed by a professional. See, *e.g., Bruni v. Tatsumi* (1976), 46 Ohio St.2d 127, 131–132, 75 O.O.2d 184, 186–187, 346 N.E.2d 673, 677–678; Evid.R. 702.

At trial, Dotts admitted that he originally negotiated the sale of the stocks held by the estate of Alexander Ferritto without having all of the documents necessary to complete the transaction. Unbeknownst to Dotts at the time the transaction was negotiated, the Ferritto estate possessed only half of the

stocks offered by the estate through its executor, William Ferritto. Rather than possessing two hundred shares each of Ohio Art and Velcro stock, the estate actually possessed only one hundred shares of each stock. The certificates thought to represent the additional shares were merely replacement certificates on the original one hundred shares of each stock that had been issued in the names of Edith and Alexander Ferritto, both deceased.

The plaintiff's expert, Timothy Walsh, testified as to the standard of care owed by a professional stockbroker. Walsh further stated that, in his opinion, Dotts had breached the standard of care owed to a client by a stockbroker in the manner in which he had handled the Ferritto estate account.

Walsh stated that before negotiating a securities transaction, a stockbroker should ascertain the availability of the documents necessary to complete the transaction. After qualifying himself as an expert to the satisfaction of the court, Walsh expressed the opinion that Dotts had violated the standard of care owed by stockbrokers in selling the securities from the Ferritto estate without first ascertaining that good delivery could be timely made. The defendant's own expert, Ronald Rzconca, also testified that Dotts was reckless in selling the estate stock without appropriate documentation.

As a result of the sale of stocks that were not actually owned by the estate, losses were incurred when the stocks were bought back.

The record establishes that on October 11, 1988, Dotts negotiated the sale of two hundred shares of Velcro stock for approximately $5,950, and two hundred shares of Ohio Art stock for approximately $3,675. The total amount of the transaction was approximately $9,625. The fair value, then, of the actual stocks owned by the Ferritto estate was approximately $4,812, or half of the total amount of the October 11, 1988 transaction.

When Olde realized, nearly a year after the stock was sold, that its stockbroker, without appropriate documentation, had negotiated the sale of twice as many shares of stock as the Ferritto estate actually held, Olde bought back the excess shares. The Ohio Art stock was repurchased at a deficit. The estate sustained the loss of its stock. However, subsequently the estate recovered its one hundred actual shares of Velcro stock, which it eventually sold for $2,800.

An exact accounting of the transactions involved in this case was not put into evidence. Furthermore, on appeal the appellant failed to explain or otherwise support his fourth assignment of error with appropriate authority. He thus is not in compliance with App.R. 16(A).

Nonetheless, we find that the record affirmatively demonstrates that the Ferritto estate sustained damages as a result of the Olde stockbroker's negligence. Accordingly, we will not reverse the jury's finding. The fourth assignment of error is overruled.

The fifth assignment of error claims:

"V. The trial court erred in allowing testimony of subsequent remedial measures, in violation of Evid.R. 407."

This assignment of error is meritless.

The appellant contends that the trial court reversibly erred in allowing the introduction of testimony regarding subsequent remedial measures, in violation of Evid.R. 407. The appellant, however, acknowledges that no objection was made to the contested testimony at the time of trial.

Generally, a reviewing court will only consider errors before the trial court which have been preserved by objection; errors not brought to the attention of the trial court are waived and cannot be raised on appeal. See *Stores Realty Co. v. Cleveland* (1975), 41 Ohio St.2d 41, 43, 70 O.O.2d 123, 124, 322 N.E.2d 629, 630. Furthermore, on review, an appellant must demonstrate both error and prejudice affecting the substantial rights of the complaining party to effect a reversal. *Smith v. Flesher* (1967), 12 Ohio St.2d 107, 41 O.O.2d 412, 233 N.E.2d 137, paragraph one of the syllabus.

The unobjected-to testimony now complained of by the appellant included the testimony of Dotts, the Olde & Co. agent, wherein he admitted that the firm had revised its procedures to require proper documentation before stock could be sold.

Evid.R. 407 permits the exclusion of evidence of subsequent remedial measures when offered to prove negligent or culpable conduct. However, in view of the plaintiff's failure to object to testimony regarding remedial procedures, and in view of the strength of the other evidence offered as to the negligence of the defendants in professionally evaluating the status of the Ferritto stock before negotiating its sale, we find that the trial court neither erred nor prejudiced the defendant by admitting the testimony regarding subsequent remedial measures undertaken by the defendant firm to reduce the likelihood of a reoccurrence of the problems incurred with the Ferritto stock transaction.

Accordingly, the fifth assignment of error is overruled.

The sixth assignment of error claims:

"VI. The trial court erred by issuing damaging and incorrect jury instructions."

■ This assignment of error is meritless.

The appellant contends that the trial court erred in instructing the jury as to the standard of care owed by stockbrokers under the "Know Your Customer Rule," adopted as Rule 405 by the New York Stock Exchange. The appellant argues that while violation of Rule 405 is evidence of stockbroker negligence, such violation does not itself *establish* negligence. Consequently, the appellant now contends that he has been unfairly prejudiced by the court's instruction. We disagree.

This court has found that rules of stock exchanges cannot be the basis of civil lawsuits. *Silverberg v. Thomson, McKinnon Securities* (Feb. 14, 1985), Cuyahoga App. No. 48545, unreported, 1985 WL 6611. This, however, does not preclude the consideration of a stock exchange rule as it relates to the standard of due care in the industry.

The contested instruction is stated as follows:

"As a stockbroker, which Olde Discount Stockbrokers is, the defendant's special duty was defined in part by what it called the Know Your Customer Rule.

"The Know Your Customer Rule was adopted as Rule 405. You may recall that rule number being given during the course of the trial. A rule adopted by the New York Stock Exchange, and it imposes broad duties upon member organizations of the New York Stock Exchange to inquire into essential facts about every customer, order or account.

"Specifically it provides, and this is not lengthy so listen to this, it provides, 'Every member organization is required through a general partner or a principal executive officer to, one, use due diligence to learn the essential facts relative to every customer, every order, every cash or margin account accepted or carried by such organization, and every person holding power of attorney over any account accepted or carried by such organization.

" 'Two, supervise diligently all accounts handled by registered representatives of the organization.'

"Therefore, if you find by a preponderance of all the evidence that the defendant failed to use due diligence to learn the essential facts relative to the plaintiff and his orders, or that the defendant failed to supervise diligently the handling of the plaintiff's accounts by its representatives, then you must find the defendant negligent."

Strictly speaking, the appellant may not be found negligent *per se* under Ohio law on a finding that its agent violated Rule 405 of the New York Stock Exchange ("NYSE"). See *Silverberg, supra.* However, this does not preclude a finding of negligence where a stockbroker is found to have violated the standard of due care which has been incorporated into the stock exchange rule and explained by an expert witness.

Walsh, the plaintiff's expert, admitted familiarity with Rule 405 of the NYSE or the "Know Your Customer Rule." Walsh explained the standard of due care owed by a stockbroker under the "Know Your Customer Rule": "In essence it says when a brokerage firm opens an account for an individual, they have to have on record a pretty clear idea of who the individual is and what their financial condition is and financial situation."

Subsequently, Walsh further explained: "If the broker is selling stock, he has got to be sure he is going to have the paperwork. To rely, without talking to anybody that just on the facts or whatever that you are going to get the paperwork in is not wise. I would say that is well outside of industry practice."

Walsh agreed that the industry practice regarding familiarity with an account had been incorporated into the New York Stock Exchange Rules. He stated, "I know what is right and within the rules and what is not. In this particular case, this is outside of what I would call a normal sound industry practice."

In this case, the court, in its jury instruction, implied that negligence *per se* followed a finding that the defendant had violated Rule 405 of the NYSE. However, this implication is harmless in view of the fact that the plaintiff's expert, Walsh, had explained that NYSE Rule 405, the "Know Your Customer Rule," embodied the industry-wide standard of care owed by a professional stockbroker. The court's instruction to the jury also included an explanation that even on a finding of negligence under the standard of due care, there must be a further finding of proximate cause.

We find that the jury instruction on the standard of care, as incorporated into Rule 405 of the NYSE, was neither erroneous nor unfairly prejudicial to the interests of the defendant. Accordingly, the sixth assignment of error is overruled.

The seventh assignment of error claims:

"VII. The trial court erred in denying Olde's motion for judgment notwithstanding the verdict or for a new trial."

This assignment of error is meritless.

Final judgment was entered by the trial court on October 26, 1987. On November 9, 1987, the defendant brokerage firm filed its motion for judgment notwithstanding the verdict or, in the alternative, motion for new trial. The defendant then filed its notice of appeal on November 23, 1987. On December 31, 1987, the trial court denied the defendant's motion for judgment notwithstanding the verdict and overruled the motion for new trial. On January 17, 1988, the defendant filed an amended notice of appeal that included the December 31, 1987 denials of the defendant's post-judgment motions. The appellant contends that the trial court erred in overruling the motions. We disagree.

Once an appeal has been perfected, the trial court loses jurisdiction over the matter pending the outcome of the appeal. *Vavrina v. Greczanik* (1974), 40 Ohio App.2d 129, 69 O.O.2d 146, 318 N.E.2d 408, syllabus.

Accordingly, the trial court did not err in overruling the appellant's motions once a notice of appeal had been filed. The seventh assignment of error is overruled.

The trial court's judgment is affirmed as to its award of compensatory damages and reversed as to its award of punitive damages and attorney fees.

*Judgment affirmed in part*
*and reversed in part.*

August Pryatel and Paul H. Mitrovich, JJ., concur.

August Pryatel, J., retired, of the Eighth Appellate District, and Paul H. Mitrovich, J., of the Lake County Court of Common Pleas, sitting by assignment.