OPINION
{¶ 1} Appellant, Brad DeRubba ("DeRubba"), appeals the $5,000 judgment against him, which was issued by the Niles Municipal Court.
 {¶ 2} The judgment for $5,000 was issued in favor of appellee, Marchese Construction Co., Inc. ("Marchese"), for installation of a driveway at DeRubba's residence. Ray Marchese was the principal of the company. The driveway was installed pursuant to a written contract between the parties. DeRubba claims on appeal that he satisfied his burden of proof to show that Marchese did not comply with the terms and provisions of the written contract, and that the trial court improperly considered evidence not before the court. Marchese counters that the trial court properly rejected the methods used by DeRubba to test for defects and that there was competent, credible evidence to support the trial court's judgment. The trial court awarded Marchese the sum of $5,000 requested in its complaint. It also gave judgment to Marchese on DeRubba's counterclaim. For the reasons indicated, we reverse the judgment of the trial court, and remand the matter for further proceedings.
 {¶ 3} The record on appeal consists of the original papers filed by the parties in the trial court, the docket of the court's entries, and the statement of evidence produced in accordance with App.R. 9(C). The trial court recited the facts in its statement of evidence:
 {¶ 4} "Plaintiff testified that the parties entered into a contract (Plaintiff's Ex. 1) for the installation of a concrete driveway at Defendant's residence. The contract called for a thickness of 4.5 to 5 inches of thickness [sic].
 {¶ 5} "Plaintiff testified that the driveway was poured on September 4, 2003 with 30 cubic yards of concrete, an amount sufficient to guarantee the thickness (Plaintiff's Ex. 4).
 {¶ 6} "Plaintiff testified that none of the contract price ($5,000.00) was paid by the Defendant.
 {¶ 7} "On cross examination Plaintiff answered that he never saw Defendant's Exhibit B and that the document was not part of the contract. Likewise, Defendant [sic, Plaintiff] claimed he never saw Defendant's Exhibit C.
 {¶ 8} "Plaintiff also took issue with Defendant's claim regarding the thickness of the concrete. Plaintiff answered that the only true method to verify thickness, according to industry standards, is by taking core samples and measuring them.
 {¶ 9} "Plaintiff also established that it would cost approximately $5,000.00 to tear out and replace this entire driveway.
 {¶ 10} "Defendant claimed to have complaints about this job from the start. Defendant exposed the sides of the driveway and presented photographs to show that he received less than the desired thickness (Deft's Ex. K).
 {¶ 11} "Defendant further drilled 1/2 in. holes in random areas of the driveway and inserted a 1/8" rod to measure the thickness (Plt's Ex. 2).
 {¶ 12} "Defendant further testified that brick was damaged by concrete splashing upon it, the grade was improper, and that the approach was a problem, but offered no evidence as to damages for these alleged defects, or expert testimony to show fault on the part of the plaintiff. In fact Defendant acknowledged that he had no expert testimony to offer because no one `wanted to get involved.'
 {¶ 13} "Defendant also testified that he contracted for the 4 1/2 [inch] minimum thickness because he contemplated a building project in his garage (an aircraft) that might require heavy trucks to use his driveway. Plaintiff [sic, Defendant] admitted that he had no evidence to suggest that the driveway as constituted would not accommodate this use."
 {¶ 14} DeRubba assigns two assignments of error in this appeal, the first of which is:
 {¶ 15} "The Trial Court committed prejudicial error by finding no genuine issue of material fact existed as evidence for the Plaintiff-Appellee or against the Defendant-Appellant's testimony of the thickness of the concrete."
 {¶ 16} We construe this assignment of error to urge that the judgment of the trial court was against the manifest weight of the evidence. DeRubba argues that "[t]he trial court stepped beyond its objective" and then quoted from the case of Lake Cty.Bd. of Commrs. v. Consumers Ohio Water Co. to establish what the trial court's objective should be. In his appellate brief, DeRubba quoted this court for the proposition that "`[a] court's primary objective in interpreting a written contract is to ascertain the intent of the parties as expressed in the terms ofthe agreement.'"[1] According to DeRubba, the trial court rejected his evidence regarding improper concrete forms being used and his photos depicting tape measurements of the edges of the driveway being less than four and one-half inches, and accepted Ray Marchese's testimony that the thickness of the concrete must have been attained by the volume of the concrete that was poured. In doing so, DeRubba argues that the trial court strayed from its primary objective and improperly considered the evidence before it: "[t]he trial court should have accepted the photos with the tape measure as proof of non-compliance of the contract language. Based on the evidence the trial court should have awarded the Appellant damages in the amount of the estimates or thereof." (Emphasis in original.)
 {¶ 17} While the assignment of error is couched in terms of "no genuine issue of material fact," the fact that the trial court adjudicated this matter by means of a bench trial means that the trial court resolved all genuine issues of material fact in arriving at the judgment it did. Based upon DeRubba's argument, we conclude that this assignment of error posits that the judgment of the trial court is against the manifest weight of the evidence. If, therefore, there is competent, credible evidence to support the trial court's judgment entry, we must affirm it.[2] The standard of review to determine whether the trial court properly applied the law to a breach of contract action is de novo.[3]
 {¶ 18} With respect to Marchese's claim, the trial court's judgment entry recites that "[t]he plaintiff testified that the driveway was poured according to the contract terms. The amount ordered and used guaranteed the driveway to be of the proper thickness."
 {¶ 19} With respect to DeRubba's defense of Marchese's claim, the trial court's judgment entry notes as follows:
 {¶ 20} "The Defendant presented much evidence to show the thickness was not as contracted. He drilled small holes in the surface and used a 1/8" thick wire to measure the depth. He also had numerous photographs to show the thickness at the edges where the forms were placed. * * *.
 {¶ 21} "In dealing with the Defendant's complaint the Court is persuaded that the Defendants [sic] method of depth measurement cannot be accepted as accurate. To measure the concrete at the edges where the forms were laid cannot give an accurate gauge of its consistent depth throughout. The bore holes Defendant made in the internal portions do not comply with industry standards regarding testing of concrete thickness and cannot be deemed as accurate."
 {¶ 22} This portion of the trial court's judgment entry, in which the trial court sanctions Ray Marchese's method of depth measurement, and at the same time discounts the pictorial evidence offered by DeRubba, strays from the primary objective in interpreting a contract: to give effect to the intention of the parties. As stated by the Supreme Court of Ohio in the case ofWestfield Ins. Co. v. Galatis:
 {¶ 23} "When confronted with an issue of contractual interpretation, the role of a court is to give effect to the intent of the parties to the agreement. * * * When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties."[4]
 {¶ 24} In this case, the written contract clearly reflected that the driveway was to be poured to a depth of four and one-half to five inches. The pictures demonstrate that the driveway departed from those measurements in a material way. Since the intent of the parties to the contract was not fulfilled, the contract was breached.
 {¶ 25} Thus, our review of the record, including the documents and exhibits introduced into evidence at trial, indicates an obvious disregard of credible evidence that proved that DeRubba did not get what he bargained for. As stated by the court in the case of Gillespie Construction v. Henderson,
"while we may not set aside a judgment as against the manifest weight of the evidence if there is credible evidence to support it, it can be set aside if it is obvious that the trial court failed to consider an abundance of uncontroverted evidence * * *."[5] We think the rationale of the Henderson
case is applicable to the instant case.
 {¶ 26} In the Henderson case, the homeowners had contracted with a builder for the construction of their home. Any changes to the plans and specifications had to be made in writing and signed by both parties. The builder also guaranteed that "`all work' would be `true, plumb, square and straight.'"[6] However, during construction, the homeowner encountered numerous problems and observed major errors, which differed substantially from the plans and specifications. For example, the basement walls were to be eight feet tall and above grade so that they could someday build a family room in the basement. As constructed, the basement walls were below grade, the basement floor was uneven and showed evidence of severe flooding. To correct the floor and raise it would substantially decrease the height of the walls, and the flooding problem could only be repaired at additional expense. This was just one problem area that led the appellate court to conclude that the homeowners did not get the "benefit of their bargain under the contract."[7]
 {¶ 27} The court in the Henderson case went on to hold that "following a thorough review of the record, we find that the court's decision is not supported by the evidence presented and admitted at trial."[8]
 {¶ 28} In this case, the contract was negotiated by the parties and then reduced to writing. It was definite and certain. DeRubba contracted for a cement driveway that was at least four and one-half to five inches thick. What he got was a driveway that ranged anywhere from two and three-quarters inches to six inches. The pictures prove the point that DeRubba was trying to make to the trial court. The pictures provide overwhelming evidence that DeRubba did not get the driveway he agreed to. They offer probative and credible evidence of the fact that the driveway was not poured to the specifications in the contract. Ray Marchese did not rebut the obvious truth that is demonstrated by the pictures. Instead, he testified that the volume of cement he poured should be sufficient to result in a four and one-half to five-inch thick driveway; and that the only way to know for sure, by industry standards, is to take core samples. The problem with Ray Marchese's argument is that the contract called for a certain thickness, not a certain volume of concrete. The other problem is that the contract is not drawn with reference to industry standards, it is drawn with reference to a certain thickness. Ray Marchese drew up the contract between the parties and agreed to install the driveway to a certain thickness. He should not now try to avoid the terms of the contract, which he negotiated, prepared, and then signed.
 {¶ 29} In our opinion, the trial court ignored an abundance of uncontroverted evidence bearing on an essential term of the contract, and for that reason we find merit in DeRubba's first assignment of error.
 {¶ 30} DeRubba's second assignment of error is as follows:
 {¶ 31} "The Trial Court committed prejudicial error by permitting the reference and use of the term `Industry Standards' by the Appellee with out documentation of the Purpose, Scope, or Measurement Procedure of this standard."
 {¶ 32} This assignment of error challenges the trial court's acceptance of testimony by Ray Marchese to the effect that the "industry standard" to ascertain thickness of a driveway is to take core samples of the driveway. DeRubba argues that Ray Marchese was not qualified as an expert to be able to opine as indicated, and/or that no foundation was laid for the testimony on "industry standards." We agree.
 {¶ 33} Lacking a transcript of the trial court testimony, it is not clear how the testimony concerning "industry standards" was elicited from Ray Marchese, but a review of the statement of evidence prepared by the trial court seems to indicate that the testimony regarding "industry standards" came out during DeRubba's cross-examination of Ray Marchese. The pertinent portion of the statement of evidence reads as follows:
 {¶ 34} "On cross examination Plaintiff answered that he never saw Defendant's Exhibit B * * *.
 {¶ 35} "Plaintiff also took issue with Defendant's claim regarding the thickness of the concrete. Plaintiff answered that the only true method to verify thickness, according to industry standards, is by taking core samples and measuring them."
 {¶ 36} DeRubba argues that Ray Marchese's testimony regarding "industry standards" is hearsay. However, it does not meet the definition of hearsay, found in Evid.R. 801(C):
 {¶ 37} "(C) Hearsay. `Hearsay' is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."
 {¶ 38} While it is true that Ray Marchese's testimony regarding industry standards was offered to prove the truth of the matter asserted, namely, that industry standards dictate that the only way to verify the depth of concrete is to take core samples, it was not a hearsay statement because it was not an out-of-court statement offered to prove the truth thereof. Instead, it was a statement elicited from Ray Marchese during cross-examination, apparently in answer to a question that DeRubba had asked him regarding the thickness of the concrete. The answer given by Ray Marchese in response to DeRubba's question may not have been the answer he wanted, but DeRubba must live with the answer given in response to his question. There is nothing in the record to suggest that DeRubba objected to the answer at the time it was given, or that he moved to strike the answer, and so it stands.
 {¶ 39} The real problems with Ray Marchese's testimony with respect to industry standards were that it was expert testimony, where Ray Marchese had not been qualified as an expert, and that the trial court relied upon the testimony governing industry standards without any supporting expert testimony.
 {¶ 40} Evid.R. 702 governs the testimony by experts. In relevant part, it provides as follows:
 {¶ 41} "A witness may testify as an expert if all of the following apply:
 {¶ 42} "(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
 {¶ 43} "(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony."
 {¶ 44} Ray Marchese is an experienced contractor knowledgeable in the installation of driveways, but the record does not reflect that he was qualified to testify concerning industry standards to measure depth of concrete by means of core samples. Nevertheless, the trial court accepted his testimony on this subject, as reflected in its judgment entry:
 {¶ 45} "In dealing with [DeRubba's] complaint the Court is persuaded that [DeRubba's] method of depth measurement cannot be accepted as accurate. To measure the concrete at the edges where the forms were laid cannot give an accurate gauge of its consistent depth throughout. The bore holes [DeRubba] made in the internal portions do not comply with industry standards regarding testing of concrete thickness and cannot be deemed as accurate."
 {¶ 46} The industry standard to determine the depth of concrete by taking core samples is not a matter of common knowledge to the average layperson. It requires expert testimony to be admissible as evidence.[9] Ray Marchese did not establish his qualifications as an expert in order to testify to an industry standard of which the average layperson would not be knowledgeable.
 {¶ 47} Even apart from whether Ray Marchese qualified as an expert, his testimony regarding an industry standard was too general to be admissible as expert testimony. As stated by the United States Bankruptcy Court for the District of Delaware:
 {¶ 48} "Courts have rejected evidence of an industry standard where it is too general. * * * Instead, courts look for objective, definitive evidence supported by specific data to meet the burden of proof."[10]
 {¶ 49} For Ray Marchese to testify that the industry standard to measure the depth of concrete was to take core samples of the concrete was too general, where he did not offer the specific industry standard or any other supporting data to make his testimony more objective and definitive.
 {¶ 50} It was error for the trial court to accept Ray Marchese's testimony with respect to an industry standard where he did not qualify as an expert, and where his testimony in that regard lacked the specificity necessary to be admissible as expert testimony.
 {¶ 51} We, therefore, find DeRubba's second assignment of error to be with merit.
 {¶ 52} The judgment of the trial court is reversed, and this cause is remanded to the trial court for further proceedings consistent with this opinion.
O'Toole, J., concurs.
Judith A. Christley, J., Ret., Eleventh Appellate District, sitting by assignment, concurs in judgment only.
[1] (Emphasis added by appellant.) Lake Cty. Bd. of Commrs. v.Consumers Ohio Water Co. (Dec. 22, 2000), 11th Dist. No. 99-L-092, 2000 Ohio App. LEXIS 6109, at *9.
[2] Mentor v. CSX Transp., Inc., 11th Dist. Nos. 2003-L-099 and 2003-L-100, 2005-Ohio-3386, at ¶ 22-24.
[3] (Citations omitted.) Kaufman v. Byers,159 Ohio App.3d 238, 2004-Ohio-6346, at ¶ 21.
[4] (Citations omitted.) Westfield Ins. Co. v. Galatis,100 Ohio St.3d 216, 2003-Ohio-5849, at ¶ 11.
[5] Gillespie Constr. v. Henderson (Sept. 28, 1994), 3d Dist. No. 17-94-3, 1994 Ohio App. LEXIS 4444, at *8-9.
[6] Id. at *2.
[7] Id. at *7.
[8] Id. at *10.
[9] See Alba Contrs., Inc. v. Shane (Nov. 30, 2000), 8th Dist. No. 77595, 2000 Ohio App. LEXIS 5595, at *10. See, also,Carroll v. Bergen (2002), 2002 Wyo. 166, 57 P.3d 1209, at ¶ 16 and ¶ 21.
[10] (Citations omitted.) In re: U.S. Interactive, Inc. v.Sampson Travel Agency, Inc. (D.Del. 2005), 321 B.R. 388, at 393.