OPINION
{¶ 1} Appellant, Roxann Preston, as the Administratrix of the Estate of Zaire Ali, deceased, appeals the January 23, 2008 judgment of the Trumbull County Court of Common Pleas affirming the verdict rendered by the jury. The jury had returned a verdict in favor of appellee, All Vinyl Fences Decks, Inc. ("All Vinyl"). Preston alleges *Page 2 
that the trial court erred in excluding the testimony of her expert witness and in granting All Vinyl's motion for a directed verdict with respect to punitive damages. We affirm the judgment of the trial court.
 {¶ 2} This case emanates from the death of Preston's five-year-old son, Zaire Ali, who drowned in an in-ground pool located on a neighboring property. The in-ground pool was surrounded by a fence installed by All Vinyl. All Vinyl constructed the fence in July 1997 after Mr. Darryl Olszewski, the owner of the home, contracted with them to replace the old chain-link fence surrounding the pool. All Vinyl installed a six-foot fence around the perimeter of the back yard and a combination of four and five-foot fencing surrounding the pool. The fence also consisted of two self-latching, but not self-closing, gates: a gate through the six-foot fence, which allowed access to the pool area but not the pool, and a gate through the four-foot fence, which allowed access to the pool.
 {¶ 3} Pursuant to the terms of the contract with All Vinyl, it was the responsibility of Mr. Olszewski to "secure and pay for all zoning permits." However, Mr. Olszewski did not obtain the zoning permit. Tina Hall, the sole owner of All Vinyl, testified that she did not follow-up with Mr. Olszewski as to whether he obtained the proper zoning permits.
 {¶ 4} Approximately one year after the fence was installed, Mr. Olszewski sold the home to Mr. and Mrs. Michael Ragozzine, the owners at the time of Zaire Ali's death.
 {¶ 5} At the time the fence was constructed and at the time of the drowning, Section 16 of the Howland Township Zoning Ordinance required, in part, that "in-ground swimming pools, or the entire property on which they are located, shall be walled or fenced in such a manner as to prevent uncontrolled access by children from the street *Page 3 
and from adjacent properties. Such fence shall be six (6) feet in height and shall be maintained in good condition. All points of entry shall be equipped with self-closing or self-latching devices at the top of the gates and made inaccessible to children * * *."[1]
 {¶ 6} Preston filed a complaint against All Vinyl alleging two claims: (1) All Vinyl's design and installation of the fence constituted negligence per se because it violated a local zoning ordinance, and (2) All Vinyl was negligent in the design and installation of the fence, since they breached the standard of ordinary care.
 {¶ 7} The case was tried to a jury, and the jury returned a verdict in favor of All Vinyl, finding that All Vinyl was negligent, but its negligence was not the proximate cause of Zaire Ali's death.[2]
Thereafter, the trial court entered judgment on the jury's verdict.
 {¶ 8} Preston filed a timely notice of appeal and asserts the following assignments of error for our review:
 {¶ 9} "[1.] The trial court abused its discretion in excluding the testimony of plaintiff-appellant's expert witness.
 {¶ 10} "[2.] The trial court erred in granting All Vinyl a directed verdict on punitive damages."
 {¶ 11} In her first issue, Preston claims the trial court erred in not permitting her witness, Mr. James Randall, to testify as an expert to the professional standards in the *Page 4 
fencing industry, specifically those standards relating to closing and latching devices on fence gates. Preston attempted to introduce the testimony from Randall that industry standards require the use of self-closing and self-latching gates on fences surrounding pools, although Howland Township Ordinance, Section 16, required "all points of entry [to be] equipped with self-closing or self-latching devices." We find this claim to be without merit.
 {¶ 12} Evid. R. 702, which governs expert testimony, states, in pertinent part:
 {¶ 13} "A witness may testify as an expert if all of the following apply:
 {¶ 14} "(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
 {¶ 15} "(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
 {¶ 16} "(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. * * *."
 {¶ 17} Although expert testimony is permitted pursuant to Evid. R. 702, the qualifications of an individual to testify as an expert witness must first be established under Evid. R. 104(A). Vinci v. Ceraolo (1992),79 Ohio App.3d 640, 645-46. (Citation omitted.) The trial court's decision as to whether an individual possesses the qualifications necessary to permit his expert testimony lies within the sound discretion of the trial court, and this court will only reverse if the trial court abused its discretion. Valentine v. PPG Industries, Inc., 158 Ohio App.3d 615,2004-Ohio-4521, at ¶ 22. (Citations omitted.) "The term "abuse of discretion" connotes more than an error of law *Page 5 
or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.'" (Citations omitted.) Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 18} A videotaped trial deposition of Randall, Preston's expert witness, was conducted on January 10, 2008. During his deposition, Randall stated that he had over 20 years of experience in fence installation. In addition, Randall testified that he had installed thousands of fences during his career, which typically included the installation of between six and ten fences around swimming pools per year. Furthermore, at the time of the deposition, he served as vice-president of Northeast Ohio Fence Deck, where he oversaw the installation of fences.
 {¶ 19} Randall also explained that he had never previously testified as an expert; he never worked in Trumbull County; he had not reviewed the zoning regulations of Howland Township; and he had not inspected the fence at issue. He also explained that his company ceased its membership to the American Fence Association.
 {¶ 20} All Vinyl filed a motion in limine seeking to preclude Randall's testimony on November 20, 2007 and, on December 7, 2007, Preston filed a brief in opposition to All Vinyl's motion in limine to exclude her expert. A jury trial commenced on January 15, 2008 and, on January 17, 2008, the trial court addressed whether Randall was qualified to make certain opinions he testified to in his deposition. In conducting an inchambers hearing, outside the presence of the jury, the trial court reasoned:
 {¶ 21} "[T]here was a discussion regarding whether or not the witness, Mr. Randall, was qualified to make certain opinions that he testified to in the deposition, and I have already told the attorneys based on what I have read and based on certain *Page 6 
information that was provided by both sides in terms of an argument as to the appropriateness of the testimony of Mr. Randall, and my reaction was that I told both parties that I thought that there was insufficient foundation to qualify him as an expert regarding certain opinions and of his testimony and the first of which was that I do not believe that he was an expert in interpreting Howland Township zoning ordinances, he had never worked under the zoning ordinance in Howland Township, and based on the testimony perhaps not in Trumbull County, that he had not ever rendered any expert opinion regarding zoning regulations in general, or any zoning regulations pertaining to Howland Township. I believe there was insufficient foundation regarding the standard in the industry, and that was based on my review of the deposition that the Court founded.
 {¶ 22} "[He] never did testify or indicate that he had any specialized training with respect to what constitutes standard in the industry, that he never taught regarding it, never wrote regarding it and, frankly, that he never testified about it before. And whether there may have been some method or means to expand upon that to make a determination as to whether he may have had some training that would otherwise have qualified him, we are limited by what is before the Court, which is simply a deposition * * * I am stuck within the four corners of the deposition and my ruling stands accordingly."
 {¶ 23} Therefore, based on the trial court's ruling, the jury was read a redacted version of Randall's testimony.
 {¶ 24} We recognize that an individual qualifying as an expert may testify to an industry standard of care. Ferritto v. Olde Co.,Inc. (1989), 62 Ohio App.3d 582, 587-88. Under the present facts and circumstances, we cannot accept the testimony of Randall as expert evidence of the industry standard. In the case at bar, Randall's *Page 7 
testimony relating to the standards in the fencing industry were based solely on his
experience. Randall's experience matters little since he did not provide any evidence of the objective industry standard nor did he have any experience in the industry in Trumbull County. While there are certainly times when experience alone will be enough to satisfy the requirements of Evid. R. 702, merely uttering the words "standard in the industry" was not enough to qualify Randall as an expert. Randall failed to cite "any other supporting data to make his testimony more objective and definitive." Marchese Concrete Co., Inc. v. DeRubba, 11th Dist. No. 2004-T-0119, 2006-Ohio-330, at ¶ 49. "`Courts have rejected evidence of an industry standard where it is too general. * * * Instead, courts look for objective, definitive evidence supported by specific data to meet the burden of proof.'" Id. at ¶ 48. (Citation omitted.) Thus, Randall's testimony with regard to this issue is merely an unsupported, ipse dixit conclusion and, thus, he failed to qualify as an expert witness.
 {¶ 25} The evidence of record does not support Preston's claim that the trial court erred in excluding those portions of Randall's testimony that related to his opinion on the standards in the fencing industry. Finding no evidence that the trial court abused its discretion in this regard, we determine Preston's argument of error lacks merit.
 {¶ 26} In her reply brief, Preston also alleges that the trial court abused its discretion in refusing to conduct a hearing pursuant toDaubert v. Merrell Dow Pharmaceuticals, Inc. (1993), 509 U.S. 579.[3]
We disagree. *Page 8 
 {¶ 27} During an in-chambers hearing, the following exchange occurred:
 {¶ 28} "The Court: [W]e are limited by what is before the Court, which is simply a deposition, there is no opportunity for the Court to conduct a [Daubert] hearing on in [sic] any way for the Plaintiff's attorneys, in my opinion, to rehabilitate the witness by asking additional questions pursuant to a [Daubert] hearing to see whether or not the issues that the Court had problems with as far as lacking in expertise may have been resolved * * *.
 {¶ 29} "[Plaintiff's Counsel]: Your Honor, I can make him available for a [Daubert] challenge.
 {¶ 30} "[Defense Counsel]: From my standpoint, Judge, we have a trial to complete here. We're in the fourth day and-
 {¶ 31} "[Plaintiff's Counsel]: And I understand that, the motion to exclude was filed on December 5th, I am just saying if that is an option, I can see if he's available.
 {¶ 32} "The Court: Well, I don't want to tell you yeah or nay or in that context because I wasn't looking to extend the trial, I am just saying that whenever the Court makes a ruling on anything it basis [sic] it on what's before the Court, not things outside of the record or outside of the evidentiary material that has presented to it. Thank you."
 {¶ 33} It is clear from the record that the court addressed, at trial, whether the testimony of Preston's proposed expert was admissible under Evid. R. 702. For reasons not specifically stated in the record, Preston's trial counsel opted to introduce Randall's deposition testimony rather than have live, in-court testimony. Consequently, it was Preston's counsel's obligation to lay a sufficient foundation for Randall's qualifications to testify as an expert during the deposition. In addressing this issue, the trial court clearly *Page 9 
noted that since a Daubert hearing was not conducted, its decision was based solely on Randall's deposition. After reviewing the record, we cannot say the trial court abused its discretion regarding the exclusion of the relevant testimony or in not holding a Daubert hearing and, as a result, this argument propounded by Preston is rejected.
 {¶ 34} Based on the foregoing, Preston's first assignment of error is without merit.
 {¶ 35} In Preston's second assignment of error, she claims that the trial court erred in granting All Vinyl's motion for directed verdict with respect to the punitive damage claim. Preston argues that Hall demonstrated a conscious disregard "for the rights and safety of other persons that had a great probability of causing substantial harm."
 {¶ 36} "[A] trial court may not grant a directed verdict unless the evidence, when construed in the light most favorable to the nonmoving party, leads reasonable minds to only one conclusion, and that conclusion is adverse to the nonmovant. Civ. R. 50(A), therefore, requires the trial court to give the nonmoving party the benefit of all reasonable inferences that may be drawn from the evidence. * * * If there is sufficient credible evidence to permit reasonable minds to reach different conclusions on an essential issue, then the trial court must submit that issue to the jury. * * *." Darroch v. Smyth, Cramer Co. (Apr. 3, 1998), 11th Dist. No. 96-L-212, 1998 Ohio App. LEXIS 1450, at *7-8. (Internal citations omitted.) A reviewing court conducts a de novo review of the trial court's judgment. Id. at *9.
 {¶ 37} In tort law, punitive damages are available in actions involving fraud, actual malice, oppression, or insult on the part of the defendant. R.C. 2315.21; Estate *Page 10 of Schmidt v. Derenia, 158 Ohio App.3d 738, 2004-Ohio-5431, at ¶ 10. (Citations omitted.) Since there is not an allegation of fraud, oppression, or insult in this case, punitive damages must rest on the presence of malice. As such, before the jury determines the question of punitive damages, sufficient evidence of actual malice must be introduced. Rouse v. Riverside Methodist Hospital (1983),9 Ohio App.3d 206, 208, quoting Detling v. Chockley (1982), 70 Ohio St.2d 134, 137-39. "Actual malice, necessary for an award of punitive damages, is (1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." Preston v. Murty (1987), 32 Ohio St.3d 334, at syllabus. (Emphasis sic.) "Since punitive damages are assessed for punishment and not compensation, a positive element of conscious wrongdoing is always required. This element has been termed conscious, deliberate or intentional. It requires the party to possess knowledge of the harm that might be caused by his behavior." Id. at 335.
 {¶ 38} Prior to the submission of a claim for punitive damages to the jury, "a trial court must review the evidence to determine if reasonable minds can differ as to whether the party was aware his or her act had a great probability of causing substantial harm. Furthermore, the court must determine that sufficient evidence is presented revealing that the party consciously disregarded the injured party's rights or safety." Id. at 336.
 {¶ 39} In an in-chambers hearing discussion with counsel for both parties, the trial court explained: *Page 11 
 {¶ 40} "[T]he evidence in this case from the, from the contract itself indicates that the responsibility to get the zoning permit contractually was placed upon the homeowner. The fact that it wasn't, the fact that it was not checked to make sure that it was gotten by the defendant in this case may be a negligent action but I don't think there's any evidence of, of the things that are necessary in a punitive damages case which include the terms hatred or any ill will or any bad intention.
 {¶ 41} "I can't imagine there's even a remote speculation that there was any of that going on as between the, the defendant in this case and the customer she was serving or the public in general, and indication that she was interested in seeing people be harmed or have somebody else damaged. So the motion for directed verdict with respect to the punitive damages claim is granted."
 {¶ 42} Viewing the evidence in the light most favorable to the plaintiff, we find no error in the trial court's ruling with respect to All Vinyl's motion for directed verdict on the issue of punitive damages. Hall testified that she registered in every city that required it and, at the time of registration, the city would give her the appropriate ordinance(s). In this case, Howland Township did not require registration and, therefore, she did not obtain a copy of the zoning regulations before the installation of the fence. However, the contract required the Olszewskis, who designed the fence in question, to secure the necessary permits. As acknowledged by the trial court, although Hall testified that she did not obtain the necessary permits, we find no evidence that Hall's failure in this regard was knowingly made with malice.
 {¶ 43} Hall further testified regarding the installation of the fence, including the six-foot exterior fence and the four to five-foot interior fence, the appearance of the *Page 12 
fence, and the type of safety latches used. Moreover, Hall stated that All Vinyl's construction of the fence prevented children from having uncontrolled access to the pool area. However, after the installation of the fence, it was the responsibility of the homeowner to maintain the fence in good condition. In fact, after the installation of the fence in 1997, All Vinyl had no further contact with the homeowner, until after Zaire Ali's death in 2004. Thus, the evidence presented at trial failed to justify an instruction on punitive damages; Preston did not demonstrate that Hall's actions constituted more than mere negligence, and the evidence did not contain a positive element of conscious wrongdoing by Hall.
 {¶ 44} Furthermore, an award for actual damages is a prerequisite to the award of punitive damages. Richard v. Hunter (1949),151 Ohio St. 185, 187.
 {¶ 45} "`Before punitive damages may be awarded actual damages must have been found and assessed. It is said that a plaintiff has no right to maintain an action merely for the purpose of inflicting punishment upon another. Many cases applying the rule requiring that actual damages be found as a predicate for the allowance of exemplary damages hold that an award of nominal damages will not serve as a basis for the imposition of exemplary or punitive damages, but such is not the case in Ohio, where it has been held that a verdict for punitive damages requires either nominal or compensatory damages as a predicate.'" Argrov Box Co.v. Illini Four Co. (June 15, 1981), 2d Dist. No. CA 6947, 1981 Ohio App. LEXIS 13598, at *6. (Citation omitted.)
 {¶ 46} We recognize that in the instant case the jury did not award damages; in fact, the jury returned a verdict in favor of All Vinyl, determining that the actions of All *Page 13 
Vinyl were not the proximate cause of the child's death. Based on the foregoing, we overrule Preston's second assignment of error.
 {¶ 47} Finding no merit in Preston's assignments of error, we hereby affirm the judgment of the Trumbull County Court of Common Pleas.
DIANE V. GRENDELL, P.J., concurs,
MARY JANE TRAPP, J., concurs in part, dissents in part with Dissenting Opinion.
[1] Testimony was elicited at trial that, while a new version of the Howland Township Zoning Ordinance is now in effect, material changes have not been made to this section.
[2] Interrogatories were submitted to the jury. The jury found by a preponderance of the evidence that All Vinyl was negligent; however, we note that negligence is a legal conclusion. The appropriate finding would have been that All Vinyl breached its duty. In order to establish a claim for negligence, appellant must prove: "`(1) that appellee owed a duty to appellant; (2) that appellee breached that duty; (3) that appellee's breach of duty directly and proximately caused appellant's injury; and (4) damages.'" Wike v. Giant Eagle, Inc., 11th Dist. No. 2002-P-0049, 2003-Ohio-4034, at ¶ 14, quoting Kornowski v. ChesterProperties, Inc. (June 30, 2000), 11th Dist. No. 99-G-2221, 2000 Ohio App. LEXIS 3001, at *7.
[3] "In Daubert, the Supreme Court `interpreted Fed.R.Evid. 702, the federal version of Evid. R. 702, as vesting the trial court with the role of gatekeeper. This gatekeeping function imposes an obligation upon a trial court to assess both the reliability of an expert's methodology as well as the relevance of any testimony offered before permitting the expert to testify. (The Ohio Supreme Court) adopted this role for Ohio trial judges in Miller v. Bike Athletic Co. (1998), 80 Ohio St.3d 607, * * *.' (Internal citations omitted.) Terry v. Caputo, 115 Ohio St.3d 351,2007-Ohio-5023, at ¶ 24, * * *." State v. Harris, 12th Dist. No. CA2007-11-280, 2008-Ohio-4504, at ¶ 26, fn 2. (Parallel citations omitted.)